UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      1:20-cv-23278-MGC

REAL PROPERTY LOCATED AT 7505 AND 7171
FOREST LANE, DALLAS, TEXAS 75230 et al.,

    Defendant.
_____/

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      1:20-cv-23279-MGC

ALL RIGHT TO AND INTEREST IN PNC CORPORATE
PLAZA HOLDINGS LLC HELD, CONTROLLED, OR
ACQUIRED, DIRECTLY OR INDIRECTLY, BY OPTIMA
CBD INVESTMENTS LLC AND/OR CBD 500 LLC, et al.,

    Defendant.
_____/

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                      1:20-cv-25313-MGC

REAL PROPERTY LOCATED AT 55 PUBLIC SQUARE,
CLEVELAND, OHIO, et al.

    Defendant.
_____/

**UNITED STATES' MOTION TO STAY CIVIL FORFEITURE ACTIONS
<u>PENDING RESOLUTION OF RELATED CRIMINAL ACTION</u>**

1

The United States of America respectfully moves this Court for an order to stay each of the above-captioned civil forfeiture proceedings and all related deadlines, except for the filing of timely claims and answers, pursuant to the mandatory stay provision of 18 U.S.C. § 981(g)(1).[1] A stay is warranted because allowing the proceedings to continue, and in particular civil discovery to commence, would adversely affect the ability of the United States to conduct an ongoing federal criminal investigation arising from many of the same facts and circumstances alleged in the Verified Complaints for Forfeiture *In Rem* in these matters (the "Complaints"). 20-23278 ECF 1; 20-23279 ECF 1; 20-25313 ECF 1.

I.  **STATEMENT OF FACTS**

These three *in rem* civil forfeiture actions arise from the United States' investigation of an international conspiracy to launder money embezzled and fraudulently obtained from PrivatBank, one of the largest banks in Ukraine (the "PrivatBank Cases"). In each of the PrivatBank Cases, the United States seeks the forfeiture of commercial real property and interests in corporations that it alleges were acquired with funds fraudulently obtained from PrivatBank.

In the case numbered 20-23278, (the "CompuCom Action"), the United States seeks forfeiture of the former CompuCom office park in Dallas, Texas. In the case numbered 20-23279 (the "PNC Plaza Action"), the United States seeks forfeiture of interests in the corporate entities that owned the building known as PNC Plaza located at 500 West Jefferson Street, Louisville, KY 40202. In the case numbered 20-25313, (the "55 Public Square Action") the United States seeks the forfeiture of an office building in Cleveland, Ohio, located at 55 Public Square (together, the "Defendant Assets"). The relevant buildings in the PNC Plaza Action and the 55 Public Square

---

[1] Pursuant to the Court's statement regarding consolidation of these actions at the hearing on February 9, 2021, because this motion applies to all three actions, the government is filing only on the docket of the lowest numbered case, 1:20-cv-23278.

2

Action have been sold pursuant to this Court's orders, and the funds are being held by the US Marshals Service as the substitute *res*.

The United States seeks forfeiture of the Defendant Assets pursuant to: (1) 18 U.S.C. § 981(a)(1)(C), because they are traceable to violations of United States law and specified unlawful activity, including violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315; and (2) 18 U.S.C. § 981(a)(1)(A), because they were involved in and facilitated one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957.

The Complaints alleges that the owners of PrivatBank, Ihor Kolomoisky and Gennadiy Boholiubov, stole over $5 billion from PrivatBank through a scheme in which they used their control of the bank to obtain fraudulent loans on behalf of companies they owned or controlled. The scheme involved laundering the fraudulently obtained loan proceeds by transferring them to and through a vast network of shell companies with accounts at PrivatBank's Cyprus branch in a series of transactions designed to disguise the nature, source, ownership, and control of the funds. Kolomoisky and Boholiubov further laundered the fraudulent loan proceeds by transferring a portion of the funds to a web of related business entities in the United States, which were established by their associates Mordechai Korf and Uriel Laber. Korf and Laber in turn used those entities to invest the misappropriated PrivatBank funds in properties and businesses in the United States, including by using millions of dollars to purchase the relevant properties in these three actions.

Notice of these actions has been provided and published in accordance with law and the Rules of this Court, and verified claims have been filed by Korf, Laber, and entities they own and control that owned the Defendant Assets. Two other claimants have filed claims in the 55 Public Square Action, but do not claim to be owners of the property.

As detailed in the attached declaration of Supervisory Special Agent Matthew M. Hoke ("Hoke Declaration"), which is submitted *ex parte* and under seal pursuant to 18 U.S.C. § 981(g)(5), the United States initiated a criminal investigation of many of the events described in the Complaints prior to the commencement of the PrivatBank Cases, and that investigation remains active and ongoing. The Complaints' allegations of money laundering, foreign bank fraud, international transportation and receipt of misappropriated funds, and a conspiracy to commit those offenses, involve many of the same facts, parties, and circumstances that are the subject of the pending criminal investigation. As part of that investigation, the United States has relied, and continues to rely, on confidential sources of information, as well as other investigative measures that would be jeopardized if exposed at this time.

## II.     ARGUMENT

Section 981(g)(1) provides that the Court "*shall* stay the civil forfeiture proceeding" if the government shows that it will adversely affect an ongoing criminal investigation. 18 U.S.C. § 981(g)(1) (emphasis added). As explained below and detailed further in the Hoke Declaration, further actions in these proceedings, including the filing of special interrogatories, substantive filings, and civil discovery, would have an adverse effect on the United States' ability to conduct its related criminal investigation. For these reasons, these proceedings should be stayed pursuant to Section 981(g)(1) for all purposes except the filing of timely claims and answers.

### A.     Section 981(g) Mandates A Stay Of A Civil Forfeiture Action Where Civil Discovery Will Adversely Affect A Related Criminal Investigation

Section 981(g)(1) provides for the mandatory stay of a civil forfeiture proceeding where the United States moves for the entry of a stay and demonstrates that continuation of the proceedings "will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1); *see also United*

*States v. Funds, In Amount of $1,699,675.00*, No. 1:13-CV-21459, 2014 WL 687553, at *2 (S.D. Fla. Jan. 16, 2014) (Section 981(g)(1) provides for a "mandatory stay" where the government demonstrates an adverse effect); *United States v. 3039.375 Pounds of Copper Coins*, No. 1:08CV230, 2008 WL 4681779, at *1-2 (W.D.N.C. Oct. 21, 2008) (entry of a stay is "automatic" if the government shows that proceeding in the civil case would adversely affect its ability to conduct a related criminal investigation).

The language of Section 981(g)(1) "reflects an amendment by the Civil Asset Forfeiture Act of 2000 that 'broadened the stay relief significantly' and removed the requirement that the Government show good cause." *United States v. Real Prop. Located at 6415 N. Harrison Ave., Fresno Cty.*, No. 1:11-CV-00304-BAM, 2012 WL 4364076, at *3 (E.D. Cal. Sept. 21, 2012) (quoting *United States v. All Funds Deposited in Account No. 200008524845*, 162 F.Supp.2d 1325, 1330 (D. Wyo. 2001)). Consistent with the statutory purpose of preventing premature disclosure of information that could compromise a criminal investigation or prosecution, Section 981(g)(5) allows the government to carry its burden of showing an adverse effect through *ex parte* submissions. *United States v. GAF Fin. Servs., Inc.*, 335 F. Supp. 2d 1371, 1373 n.2 (S.D. Fla. 2004).

      **B.**    **The Civil Forfeiture Cases And Criminal Investigation Are "Related"**

A civil asset forfeiture case is "related" to a criminal investigation for purposes of Section 981(g) when both proceedings involve similar "parties, witnesses, facts and circumstances," even if they are not identical. 18 U.S.C. § 981(g)(4); *see also GAF Fin. Servs., Inc.*, 335 F. Supp. 2d at 1373 (finding that a criminal investigation was "clearly related" to the civil case where they shared "common facts, similar violations, and some common parties.") (citation omitted).

The Hoke Declaration shows the high degree of similarity between the facts and circumstances, witnesses, and parties in these civil forfeiture actions and those in the pending criminal investigation. *See* Hoke Declaration at ¶¶ 3, 4, 8, 9. The grounds for forfeiture of the Defendant Assets and the criminal investigation arise from the same underlying facts. The Complaints allege that the Defendant Assets were purchased with proceeds of the central conspiracy that is the subject of the criminal investigation—a conspiracy to defraud and embezzle from a foreign bank through fraudulent loan applications. They also allege that the Defendant Assets are subject to forfeiture because they are traceable to funds involved in transactions that laundered the proceeds of the fraudulent loan scheme, in violation of 18 U.S.C. §§ 1956 and 1957.

As further detailed in the Hoke Declaration, the scheme that led to the acquisition of the Defendant Assets, and the conduct which is the basis for the forfeiture of those assets, were part of the same scheme that is the subject of the criminal investigation, and involved many of the same parties and witnesses. The cases are therefore related for purposes of Section 981(g)(1). *See United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, in Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d 64, 65–66 (D.D.C. 2006).

For their part, Claimants insist that the government's criminal investigation is related to the PrivatBank Cases. In ongoing litigation related to a search warrant issued in this district, Claimants have argued that there is substantial overlap between the investigation and the civil forfeiture actions. *See* Appellants Brief, *United States v. Mordechai Korf, et al.*, 20-14223 (11th Cir. December 21, 2020) (asserting that "the transactions and occurrences at issue in the Delaware case *overlap entirely with*, and are *substantively identical* to, the factual predicate for the Northern District of Ohio's criminal investigation" and that "[t]he allegations and transactions underlying

6

the Delaware litigation are also the same as the ones the government has made in two recent, pending civil forfeiture actions") (emphasis in original).

### C. Civil Discovery Will Adversely Affect The Related Criminal Investigation

Section 981(g) sets a low threshold for the government to demonstrate that civil discovery will have an adverse effect on a related criminal investigation. *See One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1183. Courts have held that "[w]here civil discovery would subject the government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding,'" a stay should be granted. *United States v. VIN: WP1AD2A26DLA72280*, No. 2:13-CV-636-FTM-38, 2014 WL 289379, at *1 (M.D. Fla. Jan. 27, 2014) (quoting *United States v. One Assortment of Seventy-Three Firearms*, 352 F. Supp. 2d 2, 4 (D. Me. 2005)).

Section 981(g)(1) "does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will affect the criminal investigation. "More specific disclosure of prejudice through detailed evidentiary support [would] only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1183-84 (citation omitted). Accordingly, courts have "routinely issued" stays based on the government's mere allegation of "*likely* prejudice" that civil discovery would pose to the related criminal case. *Id.* at 1184; *see also GAF Fin. Servs., Inc.*, 335 F. Supp. 2d at 1373 (issuing stay based upon "anticipated adverse impact" of civil discovery, notwithstanding the absence of pending discovery requests).

A stay of the instant forfeiture proceedings is appropriate and necessary because allowing Claimants to conduct civil discovery at this time would compromise the United States' ability to

conduct its related criminal investigation, which is presumed to remain secret, by exposing that investigation to early and broader civil discovery than would be available in the criminal case.

*First*, a stay is necessary because civil discovery would likely lead to the disclosure of information that would have a detrimental effect on the related criminal investigation. Civil discovery adversely affects a criminal investigation and warrants a stay when it "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others." *All Funds on Deposit in Suntrust Account XXXXXXXX8359 in the name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d at 66.

Interference with the government's obligations of secrecy, as well as the cooperation of confidential sources of information in a criminal investigation is a risk posed by civil discovery here. As the Hoke Declaration explains, allowing Claimants to conduct discovery would expose the identities of witnesses who have provided and will provide information and testimony in both the civil forfeiture actions and the criminal investigation. If that occurs, the confidential informants may cease providing information, and, to the extent they are not reachable through process in the United States, they may make themselves unavailable for future testimony. Potential sources of information who have not yet been interviewed by the government would likely be deterred from coming forward.

Depositions of confidential sources of information would be even more detrimental to the criminal investigation. If allowed, they would reveal a host of other information, including the government's investigative plans and the extent of the government's knowledge. Such disclosure would threaten the United States' ability to continue obtaining information from those sources and to protect potential witnesses in the criminal case from contact by Claimants.

***Second***, a stay is appropriate to prevent the potential criminal defendants from using civil discovery to circumvent the criminal discovery process. Since criminal discovery is narrower in scope than civil discovery, and timed deliberately to prevent the subject from gaining early access to the substance of the investigation, a stay is necessary to prevent claimants in a civil forfeiture action from using the liberal civil discovery rules to obtain information—including the identities and depositions of prosecution witnesses, investigative materials discoverable under Fed. R. Crim. P. 16, and *Jencks* and *Giglio* material—prior to the deadlines for providing such discovery in a criminal case. *See United States v. Contents of Nationwide Life Ins. Annuity Account No. 0961*, No. 1:05-CV-00196, 2007 WL 682530, at *1 (S.D. Ohio March 1, 2007) (claimants cannot be allowed to use civil discovery as a "back door method to obtain discovery outside the scope of Fed. R. Crim. P. 16."); *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184 (deposition of criminal case agent "would require him to reveal information and evidence collected in support of [the] indictment, which the Government need not reveal in criminal discovery").

The transactions central to the criminal investigation, as laid out in the Hoke Declaration, involve several actors working closely together with Claimants. Permitting Claimants to obtain material discoverable in a civil action—including information that supports the United States' theory for civil forfeiture, or which Claimants may use to support their claims or defenses—before the criminal investigation is complete would allow potential criminal defendants to have access to information long before they would be entitled to it in a criminal case. *See* Fed. R. Crim. P. 16(a)(2)) ("[D]iscovery or inspection of reports, memoranda, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case" is generally not subject to disclosure). A stay is necessary

9

to prevent Claimants and potential criminal defendants from obtaining premature access to such information.

A stay is also warranted to prevent Claimants from disclosing information obtained through civil discovery to others with whom they have close relationships and who may be subjects in the investigation. *See United States v. Assorted Firearms-Motorcycles & other Pers. Prop.*, 677 F. Supp. 2d 1214, 1216 (C.D. Cal. 2009) (a "close connection between non-defendant Claimants and defendants in the criminal action" created "a significant risk" that information learned through civil discovery would be "improperly disclosed to the criminal defendants"); *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184 (issuing stay where there was "a significant, familial connection" between the claimant and criminal defendant that was "likely to compromise the criminal proceeding" because the defendant's sister was a manager of the claimant, and "[d]ue to this close relationship, there [was] a significant risk that information obtained by [the claimant] from the deposition of [the case agent] would be disclosed to" the defendant).

***Third***, a stay is warranted because subjecting the United States to civil discovery requests would unduly burden and divert the efforts of the law enforcement agents who are currently conducting the criminal investigation. *See All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, in Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d at 66 (issuing a stay where the government stated that "responding to civil discovery would burden law enforcement officials who are otherwise conducting a contemporaneous criminal investigation").

***Fourth***, as the Hoke Declaration makes clear, there are concrete concerns regarding the safety of sources of information, as well as the integrity of data, both of which could be compromised by early disclosure in the context of civil discovery.

Since the United States has made an actual showing regarding the anticipated adverse effects that civil discovery would have on the pending criminal investigation—including the likely disclosure of confidential information and witnesses and an undue burden on law enforcement—a stay of these proceedings pursuant to 18 U.S.C. § 981(g) should be entered.

### D. The Mandatory Stay Encompasses Claimants' Motions To Compel Arbitration And To Dismiss And Should Be Implemented Before They Are Addressed

The mandatory stay under Section 981(g)(1) should apply to Claimants' Motions to Compel Arbitration under the Treaty Between the United States of America and Ukraine Concerning the Encouragement and Reciprocal Protection of Investment (the "Treaty"), as well as the Motions to Dismiss. *See, e.g.*, 20-23278 ECF 36, 37. Most simply, as explained in the government's Motion for Extension, the Motions to Compel are actually motions to dismiss under Federal Rule of Civil Procedure 12(b)(1), because they seek to divest this court of jurisdiction. *See id.* at 5. As such, pursuant to Rule G(6) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules"), the government *must* have the opportunity to serve special interrogatories regarding Claimants' standing, and Claimants *must* respond, *before* the government is required to respond to the Motions to Compel and the Motions to Dismiss. *See* Supplemental Rule G(6)(a)-(c), 20-23278 ECF 45 at 3-5. The special interrogatory process is not discretionary; it is a fundamental part of Supplemental Rule G and a necessary component of civil forfeiture proceedings. *See United States v. One Hundred & Sixty Four Thousand Four Hundred & Sixty Five Dollars in United States Currency ($164,465.00)*, No. 16-CV-80339, 2016 WL 11201757, at *3 (S.D. Fla. June 21, 2016) (special interrogatories "serve an essential function in the asset forfeiture context by allowing the government to test a claimant's bare assertion of standing against an evidentiary basis"). Because responses can come only after

the special interrogatory process is complete, the mandatory stay should encompass the government's deadline to respond to the Motions to Compel and Motions to Dismiss.

At the status conference on February 9, 2021, Claimants' counsel urged the Court to address the Motions to Compel *before* the motion to stay on the basis that the arbitration tribunal is the exclusive forum to resolve claims to the Defendant Asset, and that this Court lacks subject-matter jurisdiction even to decide the United States' Motion to Stay. Transcript of Hearing, 20-23278 ECF 44 at 11-12. That position relies on a raft of fundamental misunderstandings about civil forfeiture, jurisdiction, and arbitration.

In effect, Claimants are arguing that the United States' motion to stay in these *in rem* civil forfeiture actions—brought pursuant to United States civil forfeiture and criminal laws, *see* 18 U.S.C. §§ 981, 1956, 1957, 2314, and 2315, in a United States court vested with exclusive jurisdiction over these cases, *see* 28 U.S.C. § 2355—is not a matter that can be adjudicated by this Court. That is fundamentally wrong. When the United States files an *in rem* civil forfeiture complaint alleging that a defendant asset is subject to forfeiture, and a person or entity files a claim contesting the forfeiture, the United States courts have jurisdiction to adjudicate the forfeitability of the asset. *See* 28 USC § 1355(a) ("The district courts shall have original jurisdiction . . . of any action or proceeding for the recovery or enforcement of any fine, penalty, or forfeiture, pecuniary or otherwise, incurred under any Act of Congress[.]"). Congress thus expressly vested the federal courts with jurisdiction to adjudicate forfeiture actions which, like this one, are brought pursuant to 18 U.S.C. § 981.

Claimants are unable to cite any provision of law—not federal arbitration law, international conventions, or the Treaty itself—which says otherwise. That is because there is none. No federal

law or treaty divests the federal courts of jurisdiction over forfeiture actions, a foundational use of the United States' police power.

At most, the Treaty may allow Claimants to argue before the arbitration tribunal that the United States' commencement of a civil forfeiture action violated their rights under the Treaty;[2] it does *not*, however, vest such a tribunal with authority—exclusive or coextensive—to adjudicate the claims *in that civil forfeiture action itself*.

Congress expressly vested this Court with jurisdiction to adjudicate the claims in these civil forfeiture actions. This Court has jurisdiction to—and, consistent with the mandate of Section 981(g), should—stay these civil forfeiture proceedings pending completion of the related criminal investigation. Whether or not the arbitration of the Claimants' grievances under the Treaty can proceed in the arbitration tribunal pursuant to the terms of the Treaty and international law during the pendency of a civil forfeiture case and a related criminal investigation is a separate issue to be resolved.[3]

### III. Conclusion

Based on the foregoing, and the Hoke Declaration filed under seal, the United States respectfully submits that the Court should enter its proposed order staying these actions pursuant to 18 U.S.C. § 981(g)(1).

---

[2] To be clear, the United States has not consented to the jurisdiction of the arbitration tribunal over the Claimants' grievances under the Treaty, and does not waive any defenses or claims available to it in that arbitration process.

[3] Claimants actually agree that a stay is proper, though they disagree with the basis. In their Motions to Compel, they even ask the Court to, "in the alternative, stay the case pending arbitration." 20-23278 ECF 36 at 20.

Dated: February 19, 2021                    Respectfully submitted,

                                          DEBORAH CONNOR, CHIEF MONEY
                                          LAUNDERING & ASSET RECOVERY
                                          SECTION

BY:     /s/ *Shai D. Bronshtein*
           Shai D. Bronshtein (ID #A5502665)
           Rachel E. Goldstein
           Trial Attorneys
           United States Department of Justice
           1400 New York Avenue NW
           Washington, DC 20005
           (202) 616-5950
           Shai.Bronshtein@usdoj.gov

           /s/ *Adrienne E. Rosen*
           Adrienne E. Rosen (ID #A5502297)
           Assistant United States Attorney
           U.S. Attorney's Office
           99 NE 4th Street, 7th Floor
           Miami, Florida 33132
           (305) 961-9338
           Adrienne.Rosen@usdoj.gov

           *Attorneys for Plaintiff*
           *UNITED STATES OF AMERICA*