UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-cv-23278-COOKE/GOODMAN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

REAL PROPERTY LOCATED AT 7505 AND 7171
FOREST LANE, DALLAS, TEXAS 75230 *et al.*,

    Defendants,

_____/

## ORDER

THIS MATTER is before the Court on claimants' motion to dismiss, ECF No. 78, and the government's motion to strike, ECF No. 79. For the reasons stated below, the Court will **DENY** the motion to strike, and **ORDER** the government to respond to the motion to dismiss, ECF No. 78.[1]

### FACTUAL BACKGROUND

This case concerns four consolidated *in rem* civil forfeiture actions brought against various defendant assets. All four actions stem from government allegations that two Ukrainian billionaires, Ihor Kolomoisky and Gennadiy Boholiubov, defrauded PrivatBank—one of the largest banks in Ukraine—over several years in the 2000s and 2010s. *See generally* ECF No. 1; ECF No. 1 (Case No. 20-cv-23279); ECF No. 1 (Case No. 20-cv-25313); ECF No. 1 (Case No. 22-cv-20238).[2] According to the government, Kolomoisky and Boholiubov each owned more than 40% shares in PrivatBank and used their influence within the bank to fraudulently obtain billions of dollars in loans.

---

[1] Also pending before the Court is the claimants' motion for a hearing. ECF No. 83. The Court will **DENY** claimants' motion for a hearing **as moot**. Instead, the Court will order a briefing schedule as stated below, and set a hearing on the motion to dismiss at a later date.

[2] When citing to the dockets in the member cases prior to consolidation with the above-captioned action the Court will include the case number of the member action in parentheticals. When citing to the docket in the instant action (either before or after consolidation) the Court shall omit the parentheticals.

The government further alleges that these funds were channeled through a series of entities in Europe and the United States, and eventually used to purchase the defendant assets in these four consolidated actions. According to the government, the purchase of the defendant assets was coordinated by two Miami-based businessmen—Mordechai Korf and Uriel Laber—who worked for Kolomoisky and Boholiubov. Korf and Laber created, owned, and managed a series of companies, which in turn owned the defendant assets.

The motions at hand concern the action against the Kentucky asset, which the government defines as a 95% interest in PNC Corporate Plaza Holdings, LLC ("PNC") owned by CBD 500, LLC ("CBD 500"). ECF No. 1 (Case No. 20-cv-23279) ¶ 3. The government "seeks forfeiture of all right to and interest in PNC [held by CBD 500, including] any interest held in or secured by the real property and appurtenances located at 500 West Jefferson Street" in Louisville, Kentucky—as well as related rights to collect and receive income from proceeds invested in PNC. *Id.*

Claimants in the action against the Kentucky asset (collectively "the Kentucky claimants") include Miami businessmen Korf and Laber, as well as several related companies: First, CBD 500 filed a claim as the owner of the 95% interest in PNC that the government seeks to forfeit. ECF No. 18 (Case No. 20-cv-23279) at 1. Second, Optima CBD Investments, LLC ("Optima CBD") filed a claim as the 100% owner of CBD 500. ECF No. 19 (Case No. 20-cv-23279) at 1. Finally, Korf and Laber each filed claims as 50% owners of Optima CBD. ECF No. 20 (Case No. 20-cv-23279) at 1; ECF No. 17 (Case No. 20-cv-23279) at 1.

## PROCEDURAL HISTORY

The case against the Kentucky asset was filed on August 6, 2020. ECF No. 1 (Case No. 20-cv-23279). On August 14, 2020, the Court entered an ex parte restraining order to maintain and preserve the asset. ECF No. 5 (Case No. 20-cv-23279). The order enjoined all persons and entities with an interest in the Kentucky asset from taking any actions that could affect the value of the asset, without government approval. *Id.* at 3. On February 24, 2021, the Court consolidated the case against the Kentucky asset with two other actions, including the above-captioned case. ECF No. 48.[3]

---

[3] A fourth action has since been consolidated with this matter. *See* ECF No. 112 (order consolidating cases).

On May 13, 2021, after holding a hearing in this matter, the Court ordered the Kentucky claimants to respond to the government's outstanding special interrogatories. *See* ECF No. 75. The Court also ordered the claimants to refile their previously filed motion to dismiss in the now-consolidated action.

On May 24, 2021, the Kentucky claimants filed their motion to dismiss. ECF No. 78. Claimants argue that the doctrine of international comity warrants dismissing this action. According to claimants, the allegedly criminal acts underlying this forfeiture action occurred in Ukraine, and therefore the Court should refrain from exercising jurisdiction. Additionally, the Kentucky claimants argue the complaint fails to state a claim because the Kentucky asset was repurchased using funds that the United States does not allege were tainted.

On May 27, 2021, in lieu of responding to the motion to dismiss, the government filed a motion to strike certain claimants from this action. ECF No. 79. In its motion the government argues that before it responds to the claimants' motion, the Court must resolve threshold standing issues. According to the government, the Court should first strike the claims of Optima CBD, Korf, and Laber because none of these claimants have a sufficient interest in the Kentucky asset.[4] The Kentucky claimants oppose this motion, ECF No. 81, and the motion is otherwise ripe for adjudication.

## LEGAL STANDARDS

When the government moves to strike a claim for lack of standing, a claimant has the burden of establishing standing. Fed. R. Civ. P., Supp. R. G(8)(c) [hereinafter "Supp. R."]; *United States v. ADT Sec. Servs., Inc.*, 522 F. App'x 480, 491 (11th Cir. 2013) (per curiam). "A claimant must satisfy [. . .] the requirements of Article III [. . .] to contest a forfeiture action." *United States v. $114,031.00 in U.S. Currency*, 284 F. App'x 754, 755 (11th Cir. 2008) (per curiam) (citing *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543–44 (11th Cir. 1987)).[5]

To satisfy Article III standing, the claimant must show "an injury, not ownership." *Via Mat Int'l S. Am. Ltd. v. United States*, 446 F.3d 1258, 1262 (11th Cir. 2006). In a civil

---

[4] The government does not dispute that, as the owner of the asset, CBD 500 is a rightful claimant in this action.

[5] A claimant must also establish statutory standing. *See $114,031.00*, 284 F. App'x at 755. However, "[t]he Government is not challenging the claimants' statutory standing at this time." ECF No. 79 at 4 n.2.

forfeiture action, "non-owners [. . .] can also have injuries resulting from the seizure of property that are sufficient to establish standing." *Via Mat*, 446 F.3d at 1262. "Substantial economic harm is plainly the type of injury for which parties may seek redress in federal court." *Id.* at 1263. To determine whether sufficient harm has occurred to establish an Article III injury, courts evaluate the interests of a claimant in the forfeited property, and assess how the forfeiture affects those interests. *See id.* at 1262–63. "Such interests are evaluated under state law; thereafter, federal law determines whether those interests may be forfeited." *ADT*, 522 F. App'x at 489 (citing *United States v. Fleet*, 498 F.3d 1225, 1231 (11th Cir. 2007)).

For a claimant's injury to be sufficient, it must be concrete and particularized, as well as actual or imminent. *Support Working Animals, Inc. v. Governor of Fla.*, 8 F.4th 1198, 1201 (11th Cir. 2021) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992)). Additionally, the claimant must show a "causal connection" between the injury and the claim asserted. *Id.* (citation omitted). Finally, the claimant must show that it is "likely as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* (quoting *Lujan*, 504 U.S. at 560).

## ANALYSIS

The Court proceeds in two parts. First, it summarizes the nature of claimants' interests, which the parties do not dispute is controlled by Delaware law and the operating agreements entered into between the various claimants. Second, the Court evaluates the arguments and relevant law presented by the parties as to whether these interests are sufficient for standing purposes. Ultimately, the Court finds there is no binding legal authority on the issue presented. However, following persuasive authority form the Fifth and Eighth Circuits, the Court finds claimants have sufficiently established standing at this stage. For these reasons the Court will **DENY** the motion to strike and **ORDER** that the government respond to the pending motion to dismiss.

> I. **The nature of claimants' interests in the subject property is controlled by Delaware law and the relevant operating agreements.**

The parties agree that claimants Optima CBD, Korf, and Laber do not have a direct ownership in the property subject to this forfeiture action ("the subject property"). Instead, claimants aver their interests in the subject property arise under Delaware law and two

operating agreements: (1) the operating agreement for CBD 500 and (2) the operating agreement for Optima CBD. *See* ECF No. 81 at 7–11.

First, claimants explain that Optima CBD is the sole member of CBD 500. Pursuant to the operating agreement for CBD 500, Optima CBD has a right to an allocation of profits and losses. ECF No. 81-2 at 6 (copy of company agreement for CBD 500). Additionally, Optima CBD has the right to take distributions of capital from CBD 500 "at the times and in the aggregate amounts [it] determine[s.]" *Id.* at 7.

Second, through the Optima CBD operating agreement, Korf and Laber also assert an indirect interest in the property subject to this forfeiture action. Korf and Laber are the sole members of Optima CBD, each with a 50% ownership interest in Optima CBD. ECF No. 81-3 at 10, 29 (copy of the Optima CBD operating agreement). As members, they are entitled to distributions of funds from the Optima CBD. *Id.* at 12. Additionally, Korf is also the manager of Optima CBD, *id.* at 11, and as such he may authorize distributions of funds from Optima CBD to its members, *id.* at 12, 13.

The government does not contest that the claimants have these indirect interests in the subject property but argues that they are too attenuated to establish standing under Article III, as further explained below.

## II. The claimants' interests are sufficient to establish Article III standing.

The Kentucky claimants acknowledge that their interests fall short of direct ownership in the subject property. However, they argue that because Optima CBD has a right to take distributions from CBD 500—and this forfeiture action interferes with that right—they have sufficiently asserted Article III standing. *See* ECF No. 81 at 9. Moreover, they argue that even without said distribution rights, under Delaware law, an interest in a limited liability company (such as the one Optima CBD asserts here) is personal property. And because the government's forfeiture action interferes with Optima CBD's rights to its personal property, Optima CBD has suffered an injury sufficient for Article III standing. *Id.* at 10–11. Similarly, the Kentucky claimants assert that—as owners of Optima CBD—Korf and Laber have rights under the Optima CBD operating agreement that would be harmed by this forfeiture action. *Id.* at 11–12.

The government argues that Optima CBD, Korf, and Laber are not the owners of the subject asset, and whatever indirect interests they assert are too attenuated to establish

5

standing. According to the government, under the doctrine of corporate distinctiveness, it is settled that a shareholder—even in the case of closely held companies owned by a single individual—does not have standing to contest the forfeiture of an asset. ECF No. 79 at 7 (citing *United States v. All Assets Held in Acct. No. XXXXXXXX in name of Doraville Properties Corp.*, 299 F. Supp. 3d 121, 136 (D.D.C. 2018) (collecting cases)). Drawing an analogy to these shareholder cases, the government asks the Court to find Optima CBD, Korf, and Laber lack Article III standing here. After all, the operating agreements make clear that CBD 500 is a distinct legal entity from the other claimants—and it is undisputed the that Optima CBD, Korf, and Laber, have no direct ownership right in the subject asset. ECF No. 79 at 8.

Having reviewed the parties' briefs, the Court finds the law controlling this dispute is unsettled. As a threshold matter, the Court notes that neither party has pointed to binding circuit law, and the Court has found none. While the government is right to note that courts have often found that shareholders have no Article III standing in a forfeiture action, at least two circuit courts have held to the contrary. *See United States v. Eleven Million Seventy-One Thousand One Hundred & Eighty-Eight Dollars & Sixty-Four Cents ($11,071,188.64) in United States Currency*, 825 F.3d 365 (8th Cir. 2016); *United States v. M/Y Galactica Star,* 13 F.4th 448 (5th Cir. 2021).[6] The Court finds the reasoning in these cases persuasive. Article III standing requires injury resulting from the forfeiture, not ownership of the subject property. Claimants Optima CBD, Korf, and Laber, have sufficiently demonstrated that forfeiture of the subject property would harm them, given their property rights and legal interests under the operating agreements and Delaware law. Accordingly, the Court finds they have made out an injury under Article III sufficient to survive the motion to strike.

## CONCLUSION

For the foregoing reasons, the Court **ORDERS AND AJUDGES** as follows:

1. The government's motion to strike, ECF No. 79, is **DENIED**.
2. The government shall respond to the Kentucky claimants' motion to dismiss, ECF No. 78, within 14 days of this order. The Kentucky claimants will have 7 days from

---

[6] In *M/Y Galactica Star* the Fifth Circuit held that although a shareholder had Article III standing, they lacked prudential standing under the forfeiture statute. 13 F.4th at 455. The government does not make a prudential standing argument here, and so the Court sees no reason to address prudential standing at this stage.

    the filing of the government's response to file a reply.

3. The Court will **DEFER** judgment on the motion to dismiss, ECF No. 78, pending the conclusion of the briefing schedule.
4. The Court will **DENY as moot**, the motion for hearing, ECF No. 83.

**DONE and ORDERED** in chambers at Miami, Florida, this 28th day of March 2022.

*Marcia G. Cooke*
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*Jonathan Goodman, U.S. Magistrate Judge*
*Counsel of record*