# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.: 1:20-cv-23278-COOKE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

REAL PROPERTY LOCATED AT 7505 AND 7171
FOREST LANE, DALLAS, TEXAS 75230, WITH ALL
APPURTENANCES, IMPROVEMENTS, AND
ATTACHMENTS THEREON, AND ANY RIGHT TO
COLLECT AND RECEIVE ANY PROFIT, RENT,
INCOME, AND PROCEEDS THEREFROM, *etc.*,

    Defendant,

_____/

## CLAIMANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
**(Consolidated Case No. 1-20-cv-23279)**

## PRELIMINARY STATEMENT

Claimants[1] demonstrated in their Brief that principles of international comity apply to the United States' claims and require this Court to abstain from considering this matter in light of Ukraine-based parallel proceedings and judgments addressing the same fundamental issues in dispute. In its Opposition, the United States contends, without any basis in law or fact, that these Ukrainian proceedings and judgments do not matter and should be given no weight by this Court. The United States is wrong, and this Court should abstain.

First, in arguing that the Ukrainian litigations are not parallel proceedings because they allegedly do not involve substantially the same facts and parties, the United States ignores that the Ukrainian litigations focus on the core issue here: whether the Ukrainian loans at the heart of the United States' claims were valid and legitimate or the product of fraud. All of the United States' claims are premised on the allegation that the proceeds used to acquire PNC Plaza ultimately came from the NZF and ZFZ Loans, which the United States asserts were fraudulently obtained in violation of Ukrainian law. The rulings in the NZF and ZFZ Judgments[2]—which confirmed that the NZF and ZFZ Loans were entirely valid and lawful, bear directly on, and indeed disprove, the United States' claims.[3] The Ukrainian court that issued the NZF Judgment addressed and rejected the United States' allegations that the NZF Loan was fraudulently obtained.

Second, the United States has it backwards in arguing it would be unprecedented for this Court to abstain from this case. What is unprecedented here is not Claimants' motion to dismiss but rather the United States' determination to pursue civil forfeiture claims based on allegations that have been adjudicated and rejected by a competent foreign tribunal. The United States does

---

[1] Capitalized terms not otherwise defined shall have the meanings ascribed to them in Claimants' Motion to Dismiss, ECF No. 78 ("Brief" or "Br."). The United States' Opposition to Claimants' Motion to Dismiss is referred to herein as "Opposition" or "Opp."

[2] Claimants submitted the long-form version of the Ukrainian judgment concerning the NZF Loan on April 5. 2022. *See* ECF No. 118, 118-1 ("NZF Judgment" or "NZF Judg."). In that same filing, Claimants explained that, upon information and belief, on February 15, 2022, the Ukrainian court considering the ZFZ Loan issued a judgment at a hearing in favor of ZFZ ("ZFZ Judgment"), but has so far been unable to issue a written judgment because of Russia's ongoing invasion. *Id.* The United States' bizarre attempt to question the veracity of Claimants' representation that the ZFZ Judgment was issued (*see* Opp. at 4, 7, 13) should be rejected (putting aside that the United States' attempt to salvage its failed claims by taking advantage of Ukraine's present struggles and dislocations is unbecoming and inappropriate). Regardless, if this Court determines that the issuance and receipt of a written ZFZ Judgment is required to decide this motion, this Court (like the Delaware court) should hold its decision in abeyance pending receipt of the final written ZFZ Judgment. *See, e.g.*, *Interim Healthcare, Inc. v. Durbin*, 2022 WL 874092, at *2-3 (S.D. Fla. Mar. 24, 2022).

[3] *See, e.g.*, *United States v. Christo*, 129 F.3d 578, 579–80 (11th Cir. 1997) (it is only after a "predicate crime becomes 'a completed offense'" that "money laundering can occur.")

1

not and cannot point to a single instance in which a court allowed the United States to ignore directly applicable foreign judgments in pursuit of a civil forfeiture claim. This Court should not be the first to permit the United States to engage in such overreach, and the Verified Complaint should be dismissed on grounds of abstention based on international comity.

Third, this Court should reject the United States' innuendo and insinuation suggesting Ukrainian courts are somehow flawed such that their judgments and/or proceedings are not worthy of deference. The United States offers absolutely no evidence to support this insulting characterization, and its apparent reliance on "questions" supposedly raised by PrivatBank in a Delaware case does not provide any basis to ignore the NZF (or any other Ukrainian) Judgment. In fact, the Delaware court stayed PrivatBank's lawsuit in favor of the parallel Ukrainian proceedings, and found that in issuing judgments the Ukrainian courts considered the "evidence, including 'detailed accounting source documents regarding the exact purpose for which the loan proceeds were used' and 'bank statements and other official documents' confirming repayment." Ex. 1 at 15. The United States' cheap-shot characterization of a Ukrainian decision it does not like as an instance of a Ukrainian judge "obliging" one of the litigants—as opposed to a judgment issued after the court conducted a proper analysis of the law and facts—is gratuitous vilification of Ukraine's courts that is no substitute for proper legal argument and analysis.

Finally, the United States fails to rebut Claimants' arguments that (i) prospective comity applies because of Ukraine's predominant interest in governing conduct in its territory, by its nationals, against its most important bank; (ii) prescriptive comity requires this Court to interpret the statutes under which the United States intends to proceed to avoid interfering with Ukraine's sovereign right to police itself and its people; and (iii) the Verified Complaint should be dismissed because the United States does not adequately trace the purportedly illicit funds through to the acquisition of PNC Plaza.

For the reasons set forth in Claimants' Brief, and as set forth below, this Court should abstain from hearing this matter and dismiss the Verified Complaint in its entirety.

## ARGUMENT

### I.  INTERNATIONAL COMITY REQUIRES ABSTENTION

Claimants previously showed that abstention is warranted because the doctrine of international comity applies and each of the requisite factors are satisfied. *See* Br. at 7-14. In Opposition, the United States does not and cannot rebut Claimants' arguments. In fact, the United

States only addresses a single abstention factor—whether the doctrine of international comity applies, *see* Opp. at 8-16—and effectively concedes that the other two abstention factors, fairness to litigants and the efficient use of scarce judicial resources, *see* Br. at 7, weigh in favor of abstention. The United States' contention that international comity does not apply in this case is wrong.

### A.     International Comity Applies

In their opening brief, Claimants demonstrated that under the doctrine of international comity, this Court should abstain from adjudicating this case and defer to the Ukrainian judgments issued in the parallel Ukraine-based proceedings brought by the borrowers at the heart of the purported predicate scheme alleged in the Verified Complaint. *See* Br. at 7-14. The United States fails to rebut that showing; in fact, it fails to cite a single case in which the United States pursued civil forfeiture claims where, as here, the underlying allegations had been adjudicated and rejected by a foreign court. The United States' response fails to change the fact that international comity applies here.

#### i.     The Ukrainian Litigations Are Parallel Proceedings That Address the Heart of the United States' Claims

To avoid the devastating consequences of the NZF and ZFZ Judgments[4]—which would undercut the entire basis for this civil forfeiture action—the United States argues that international comity does not apply because the Ukraine-based litigations do not involve substantially similar parties and issues and are therefore not parallel proceedings. Opp. at 12. That is wrong. The Ukrainian litigations, including and especially those concerning the NZF and ZFZ Loans, are obviously parallel proceedings, triggering the application of international comity principles.

The United States falsely asserts that the subject matter of this action and the NZF and ZFZ litigations are somehow "entirely different" because the Ukrainian litigations, which concern

---

[4] The United States wrongly seeks to avoid the NZF Judgment entirely by asking the Court to pretend it does not exist. *See* Opp. at 5-7. On this motion to dismiss, in addition to the pleadings, this Court may consider matters of which it may take judicial notice, including foreign court orders like the NZF Judgment. *See* Br. at 5, n.3; *La Grasta v. First Union Sec's., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004) (court may consider "well-pleaded factual allegations, documents central to or referenced in the complaint, and <u>matters judicially noticed</u>") (emphasis added). Further, this Court's consideration of additional materials does not convert this motion to one for summary judgment because a decision regarding foreign law is a "ruling on a question of law," and "the court may consider <u>any</u> relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1 (emphasis added); *see In re Chiquita Brands Int'l, Inc. Alien Tort Statute & S'holder Derivative Litig.*, 2020 WL 7388944, at *9 (S.D. Fla. Sept. 30, 2020) ("the Court may determine [foreign law] based on foreign law materials outside the pleadings in ruling on a motion to dismiss.").

3

specific loans (like the NZF and ZFZ Loans), "are governed by Ukrainian commercial law between borrower and lender," Opp. at 12, while the United States' allegations go beyond the specific loans and Defendant Asset at issue here, *id.* at 13-14. This argument ignores that the broader allegations the United States references, which were not addressed in the NZF Judgment (*e.g.*, whether misappropriated funds were laundered into the United States to purchase the Defendant Asset), are rendered irrelevant by the NZF Judgment.

The United States concedes that the NZF and ZFZ Loans "are the basis for forfeiture here," Opp. at 4, and that its claims are premised on allegations that the funds "used to complete the purchase of PNC Plaza [were] misappropriated from PrivatBank via two fraudulent loans," the NZF Loan and the ZFZ Loan. ECF No. 1 ("Compl.") ¶¶107-24. However the United States chooses to characterize (or mischaracterize) its allegations, the United States cannot deny that the *sine qua non* of the alleged scheme concerning PNC Plaza was the fraudulent procurement of the NZF and ZFZ loans from PrivatBank in Ukraine by Ukrainian entities NZF and ZFZ. Only "dirty" money (*i.e.*, funds that were illicitly or unlawfully obtained) can be laundered; if there is not "dirty" money there is no laundering; and if there is no laundering, there is no ground for forfeiture. *See United States v. Christo*, 129 F.3d 578, 579–80 (11th Cir. 1997) (it is only after a "predicate crime becomes 'a completed offense'" that "money laundering can occur").

The predicate crimes the United States identifies are fraud on a foreign bank, 18 U.S.C. § 1956(c)(7)(B)(iii), and receipt and transportation of stolen or fraudulently obtained property, 18 U.S.C. §§ 2314-15. The "offense against a foreign nation" of "fraud . . . against a foreign bank" required by 18 U.S.C. § 1956(c)(7)(B)(iii) mandates that the Government "be able to prove violations of foreign [Ukrainian] law," *United States v. Prevezon Holdings LTD.*, 122 F. Supp. 3d 57, 73 (S.D.N.Y. 2015) (emphasis added), and the transfer of stolen goods pursuant to 18 U.S.C. §§ 2314-15 requires "under Ukrainian law that the property in question was not [lawfully] owned by [defendant]," *United States v. Lazarenko*, 2003 U.S. Dist. LEXIS 25940, *11, 32-33 (N.D. Cal. Sept. 10, 2003) (emphasis added).

Accordingly, to succeed on its claims, the United States must show that the procurement of the NZF and ZFZ Loans was fraudulent and that the loan proceeds were obtained in violation of Ukrainian law. The Delaware Court considering PrivatBank's civil lawsuit involving allegations nearly identical to those here recognized that the case turned on the validity of the Ukrainian loans (including the NZF and ZFZ Loans), noting that "there is no way to excise the

question of whether these loans were proper . . . without gutting [PrivatBank's fraud] claims," and noting "the propriety of the majority of the Optima Scheme Loans are directly at issue in the [Ukrainian] Borrower Actions" where Ukrainian courts will address allegations "that the Optima Scheme Loans were inappropriately sourced." Ex. 1 at 22, 24 n.95.

The Delaware Court's ruling applies with special force here. If the NZF and ZFZ Loans were validly and lawfully procured in Ukraine, under Ukrainian law, the United States' claims necessarily collapse. If the proceeds of the Loans were validly obtained, as the Ukrainian courts ruled after careful consideration of the evidence, they could not have been the subject of unlawful money laundering. *See Christo*, 129 F.3d at 579-80. Given the dispositive impact of the Ukrainian court's findings in the NZF Judgment, the United States misrepresents the substance of the Judgment and the extent to which it eviscerates the United States' allegations. *See* Opp. at 12-13.

*First*, the United States fails in suggesting that the NZF Judgment merely found the NZF Loan had been "terminated due to proper performance." *Id.* In fact, the NZF Judgment specifically and expressly rejected the United States' allegations in this matter (which the United States acknowledges).[5]

*Second*, contrary to the United States' assertion that the NZF loan was fraudulent because in applying for it NZF allegedly misrepresented the Loan's primary purpose as "[f]unding ongoing operations," Compl. ¶119, the Ukrainian Court found that, "[b]ased on the examination of all evidence provided by the litigants," NZF used the proceeds from the NZF Loan consistent with "the [] loan agreements and for the purpose provided for in the [] loan agreements, which is the financing of the current activities of [NZF].'" ECF No. 118-1 (NZF Judgment) at 41.

*Third*, contrary to the United States' assertion that NZF misrepresented the "[s]ources for repaying" the Loan as "[r]evenue from the principal line of business," Compl. ¶117, the Ukrainian Court found the opposite: that NZF repaid the NZF Loan with "funds obtained from business activities and at the expense of the Guarantor," ECF No. 118-1 (NZF Judgment) at 41.[6]

---

[5] Even as it contends that the subject of the NZF litigation is "entirely different" than here, the United States notes that the Ukrainian Court in the NZF Judgment specifically identified the United States' allegations in this action. *See* Opp. at 11-12.

[6] These findings are similar to those made by the Delaware court, which found that "the [Ukrainian] courts held hearings and issued rulings against PrivatBank in all six actions rejecting its allegations that [NZF] misused loan proceeds and failed properly to repay loans." Ex. 1 at 15. Given the similarity in the claims at issue in the ZFZ Judgment, *see* Br. at 6, Claimants expect that the ZFZ Judgment will include similar findings to the NZF Judgment.

Thus, whereas the United States' claims are premised on allegations that NZF's "application for, receipt of, and use of" the NZF Loan constituted "embezzlement and conversion of PrivatBank's money," Compl. ¶133, the Ukrainian court held precisely the opposite. The NZF Judgment vitiates the United States' allegations that the NZF Loan was "fraudulent," was "the proceeds of embezzlement, misappropriation, and fraud," and was obtained through conduct that "violated [specified] provisions" of Ukrainian law. *Id.* ¶¶22, 67-76, 107-24.

The United States also contends that the NZF litigation is not a parallel proceeding because there is no common identity of parties. *See* Opp. at 12. But the Ukrainian litigations, including the NZF litigation, were brought by, among others, NZF and ZFZ, the Ukrainian borrowers identified in the Verified Complaint. And the Ukrainian litigations were brought against PrivatBank—the same bank the United States identified as the lender, and that has made essentially identical allegations as the United States against the Ukrainian borrowers (including NZF and ZFZ).

The NZF and ZFZ litigations are parallel proceedings to this one, and international comity therefore applies.

### ii. The United States' Unprecedented Theory of Forfeiture Does Not Bar Application of International Comity

Without any legal basis, the United States argues that international comity does not apply when the United States is a plaintiff in a civil forfeiture purportedly acting to vindicate its interests. *See* Opp. at 9-11. In fact, the United States' actions in pursuing a civil forfeiture claim where, as here, valid foreign judgments eviscerate the United States' allegations is unprecedented.

The United States misstates the case law in wrongly contending that American courts have uniformly rejected abstention based on international comity "where the United States sought to forfeit assets involved in violations of U.S. anti-money laundering laws predicated on violations of foreign law." Opp. at 9. The cases the United States cites, Opp. at 9-11, are inapposite and provide no support for the United States' assertion. Indeed, the United States does not cite a single case where, as here, a court declined to apply international comity and abstention where the United States was pursuing claims based on allegations of foreign conduct that had been adjudicated in the appropriate foreign court in a manner contrary to the United States' allegations. *See id.* In fact, in some of the United States' cases, the relevant and purportedly unlawful foreign conduct was the subject of investigations, settlement agreements, indictments, or convictions in appropriate foreign jurisdictions. *See United States v. All Assets Held In Acct. No. XXXXXXX*, 83 F. Supp.

6

3d 360, 363-64, 371 (D.D.C. 2015) (Nigerian government entered into settlement with former official at center of alleged scheme); *United States v. Approximately $3,275.20 seized from Bank of Am. Acct. No. XXXXXXXXXX*, 2021 WL 5300512, at *4 (S.D. Fla. Nov. 15, 2021) (Venezuelan government had initiated investigation and prosecutions); *United States v. All Assets Held at Bank Julius Baer & Co., Ltd.*, 2005 WL 6718216 (D.D.C.) (¶¶15-17) (complaint alleging that individual at center of scheme had been charged with crimes in Ukraine, convicted of crimes in Switzerland, and indicted for crimes in the United States).

International comity necessarily applies to civil forfeiture actions in which the United States is a plaintiff, and there is absolutely no reason why the United States can or should refuse to recognize a validly-issued foreign judgment.

### B.  Retrospective Comity Applies

Unable to show that the NZF and ZFZ litigations are not parallel proceedings, the United States offers no meaningful legal or factual theory to preclude the application of retrospective comity.  The United States does not and cannot assert that (i) the Ukrainian courts issuing the NZF and ZFZ Judgments used proceedings inconsistent with civilized jurisprudence, (ii) the Judgments were rendered by fraud, or (iii) the Judgments are repugnant to fundamental principles of decency and justice.  *See* Br. at 8.

In place of reasoned legal argument supported by case law and legal principles, the United States resorts to gross inuendo and insinuation, baselessly smearing the Ukrainian court system and Ukrainian judges.  For example, the United States notes that in the Delaware action, PrivatBank "has thrown into serious question the legitimacy of the Ukrainian decisions," Opp. at 6 n.3—but then does not explain what those "questions" are or how they purportedly render the NZF Judgment short of the comity standard.[7]

Federal courts have repeatedly rejected assertions that Ukrainian courts are insufficient, *see* Br. at 8, and the United States provides no substantive reason to suggest why the Ukrainian judgments do not meet the comity standard.  Engaging in petty mudslinging against foreign courts, the United States does not come close to meeting its burden of showing why the NZF and ZFZ Judgments are not valid.  *See In re Arb. between Monegasque De Reassurances S.A.M. v. Nak*

---

[7] It bears emphasis that the Delaware court not only stayed PrivatBank's Delaware action in favor of the Ukrainian litigations, but made a point of describing the Ukrainian litigations as the product of careful consideration of the "evidence, including 'detailed accounting source documents regarding the exact purpose for which the loan proceeds were used' and 'bank statements and other official documents' confirming repayment." Ex. 1 at 15.

7

*Naftogaz of Ukraine*, 311 F.3d 488, 499 (2d Cir. 2002) ("meager and conclusory submissions" do not permit a court to "to pass value judgments on the adequacy of justice and the integrity of [Ukraine's] judicial system on the basis of no more than [those] bare denunciations and sweeping generalizations.") (alterations in the original); *Universal Trading & Inv. Co. v. Kiritchenko*, 2007 WL 2669841, at *15 (N.D. Cal. Sept. 7, 2007) (finding that plaintiff "has not demonstrated that the Ukrainian courts are so lacking in impartiality, due process, or procedural fairness that the United States courts should disregard all Ukrainian court decisions as a matter of course, or the particular decisions at issue herein").

Because the NZF and ZFZ litigations and Judgments are parallel foreign proceedings that meet the retrospective comity standards, this Court should abstain and dismiss the United States' claims on the basis of international comity.

### C.  Prospective Comity Applies

Claimants showed in their Brief that this Court should abstain on the basis of prospective comity because Ukraine has a greater interest in adjudicating these issues and provides an adequate forum. *See* Br. at 9-11.  In Opposition, the United States puts the cart before the horse in arguing that it has an interest in determining whether the Defendant Asset is subject to forfeiture, and that it cannot litigate that issue in an alternate forum like Ukraine.  *See* Opp. at 15-16.  Whether the Defendant Asset is subject to forfeiture depends, first and foremost, on whether it was acquired with tainted funds.  *See supra*, Section I.A.i.  Whether the funds received in connection with the NZF and ZFZ Loans were obtained unlawfully is a question of Ukrainian law that has been considered, and continues to be considered, by Ukrainian courts, which clearly have a predominant interest in deciding such issues by applying Ukrainian law to Ukrainian businesses and individuals. The United States has no right to assume the role of Ukrainian prosecutor and usurp for itself a legal analysis under Ukrainian law concerning Ukrainian loan transactions carried out by Ukrainian citizens.

### D.  Prescriptive Comity Applies

The United States further ignores that, as Claimants showed, the doctrine of prescriptive comity also calls for abstention. *See* Br. at 14 n.5; ECF No. 118.  Prescriptive comity is a canon of statutory construction and requires that statutes be construed "to avoid unreasonable interference with other nations' sovereign authority where possible." *RJR Nabisco, Inc. v. European Cmty.*, 579 U.S. 325, 347 n.9 (2016); *see F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155,

8

164-69 (2004); *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 813-21 (1993).  Under the doctrine of prescriptive comity, the predicate crime statutes, 18 U.S.C. § 1956(c)(7)(B)(iii) and 18 U.S.C. §§ 2314-2315, should be interpreted as not applying to foreign conduct that the foreign courts have determined to be entirely lawful and proper under the foreign nation's own laws.  In other words, this Court should interpret the term "fraud . . . against a foreign bank" described in 18 U.S.C. § 1956(c)(7)(B)(iii), and the definition of stolen property described in 18 U.S.C. §§ 2314, 2315, as <u>not</u> encompassing foreign conduct that the foreign government has not charged as a crime (for which the alleged perpetrators are innocent as a matter of Ukrainian law), and <u>especially</u> not encompassing foreign conduct (and loans) that foreign courts have held to be lawful.

## II. THE CLAIMS SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM

Claimants showed in their brief that the Verified Complaint should be dismissed because the United States fails to adequately plead the tracing of the purportedly illicit funds to the acquisition of PNC Plaza.  *See* Br. at 16-17.  The United States' arguments in Opposition are unavailing.

PNC Plaza was purchased in 2011 for $77 million (Compl. ¶ 103), and at least $65 million (or 84%) of that purchase price came from routine acquisition financing.  The minority "portion" traceable to supposedly improper Ukrainian loans traveled through multiple entities, bank accounts, and countries.  *See id.* ¶¶ 125-26, 128-30.  Then, in 2018, the Complaint alleges that PNC Plaza went into foreclosure proceedings which ended in "Firm A," an "unrelated [indisputably untainted] third-party investor," buying out the existing promissory note for approximately $27 million.  *Id.* ¶¶ 139 n.10, 146.  The "approximately $10 million" contributed by "Korf and Laber's CBD 500" in 2018 came from Felman Trading Americas, Inc. and was not tainted.  *Id.* ¶¶ 150-51.  The original financing was thus admittedly "extinguished" in 2018 and is not actionable.  *Id.* ¶¶ 138, 149; *see* Supplemental Rule G(2); 18 U.S.C. § 983(c)(3); *United States v. Real Property at 2659 Roundhill Dr., Alamo, Cal.*, 194 F.3d 1020, 1026-27 (9th Cir. 1999).

Indeed, the purchase of PNC Plaza out of foreclosure in 2018 was made by new entities that did not exist in 2011.  "Korf and Laber's CBD 500 [LLC]," was formed in 2018, and Optima CBD Investments, LLC, (CBD 500's wholly owning parent company), was formed in 2017.  Compl. ¶¶ 140-41, 144.  Along with "Firm A," CBD 500 and Optima CBD Investments jointly "formed PNC Corporate Plaza Holdings LLC, a Delaware company, on September 5, 2018" to

buy PNC Plaza out of foreclosure.[8]  *Id.* ¶¶ 139-44.  As set forth in the prior paragraph, the $10 million contributed by "Korf and Laber's CBD 500" to the joint venture came from Felman Trading Americas, Inc. and is not alleged to have been tainted.

The United States defined the Defendant Asset as "all right to and interest in PNC Corporate Plaza Holdings LLC held, controlled, or acquired, directly or indirectly, by Optima CBD Investments LLC and/or CBD 500 LLC . . . ." *Id.* ¶ 10.  Aside from being impermissibly vague, those rights and interests were obtained with clean money.  And in fact PNC Corporate Plaza Holdings LLC did not even exist until 2018—seven years after the original purchase of PNC Plaza by separate entities in 2011, with separate money.  18 U.S.C. § 981 requires the "involve[ment]" of the "*property*" in a criminal act, and 18 U.S.C. § 983(c)(3) likewise requires "a substantial connection between the property and the offense."  Here, the United States has completely failed to demonstrate any connection whatsoever between the Defendant Asset, *i.e.*, the "right to and interest in PNC Corporate Plaza Holdings LLC" held by "Optima CBD Investments LLC and/or CBD 500 LLC," and the offense, *i.e.*, any alleged bank fraud or theft at PrivatBank in 2011.  Because the rights to and interests in PNC Corporate Plaza Holdings LLC have no "substantial connection" to or "involvement in" the alleged bank fraud and alleged theft at PrivatBank in 2011, the Complaint fails to state a claim and must be dismissed.

## CONCLUSION

For the foregoing reasons, and those set forth in Claimants' Brief, the Verified Complaint should be dismissed in its entirety and with prejudice.

---

[8] This corporate chain is alleged in the Complaint, but is also demonstrated visually by the organizational chart previously attached as ECF No. 81-2.

10

Respectfully submitted,

**BLACK SREBNICK, P.A.**
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
Fax: (305) 371-6322

By: */s/ Howard M. Srebnick*
Howard M. Srebnick
Florida Bar No. 919063
Robert T. Dunlap
Florida Bar No. 119509
HSrebnick@RoyBlack.com
RDunlap@RoyBlack.com
*Attorneys for Claimants Korf, Laber, and the Corporate Entities*

**KASOWITZ BENSON TORRES LLP**
1633 Broadway
New York, New York 10019
(212) 506-1700

By: _____
Marc E. Kasowitz
Mark P. Ressler
Joshua N. Paul
*Pro Hac Vice Anticipated*
MKasowitz@kasowitz.com
MRessler@kasowitz.com
JPaul@kasowitz.com
*Attorneys for Claimants Korf, Laber and the Corporate Entities*

Devin "Vel" Freedman, Esq.
Florida Bar No. 99762
Colleen Smeryage, Esq.
Florida Bar No. 100023

**ROCHE FREEDMAN LLP**
1 SE 3rd Ave.
Suite 1240
Miami, FL 33131
vel@rcfllp.com
csmeryage@rcfllp.com
*Attorneys for Claimants Korf, Laber and CBD 500 LLC*