**UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

July 11, 2022

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 21-10696-GG
Case Style: USA v. Real Prop Located 55 Public Sq
District Court Docket No: 1:20-cv-23278-MGC
Secondary Case Number: 1:20-cv-25313-MGC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 21-10696

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

REAL PROPERTY LOCATED AT 55 PUBLIC SQUARE, CLEVELAND, OHIO,

Defendant,

URIEL LABER, et al.,

Claimants,

LAW OFFICES OF CLEVELAND, INC.,

Claimant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:20-cv-23278-MGC,
1:20-cv-25313-MGC

---

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: May 17, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

____________________

No. 21-10696

Non-Argument Calendar

____________________

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

REAL PROPERTY LOCATED AT 55 PUBLIC SQUARE, CLEVELAND, OHIO,

Defendant,

URIEL LABER, et al.,

Claimants,

LAW OFFICES OF CLEVELAND, INC.,

Claimant-Appellant.

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket Nos. 1:20-cv-23278-MGC,
1:20-cv-25313-MGC

---

Before ROSENBAUM, JILL PRYOR, and GRANT, Circuit Judges.

PER CURIAM:

This case arises out of an *in rem* civil-forfeiture action filed by the government against an office building in Cleveland, Ohio, allegedly bought as part of an international money-laundering scheme. When the government filed its complaint, the building was under contract to be sold by the building's owners (and alleged money-launderers) to an unaffiliated third party. The government agreed to go forward with the sale while the forfeiture case proceeded, and it filed a motion requesting the court's approval for an uncontested interlocutory sale under Rule G(7)(b) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture. The court authorized the sale, which closed in February 2021,

and the sale proceeds were substituted for the building as the *res* in the forfeiture proceeding.

Appellant Law Offices of Cleveland ("Cleveland Law"), a tenant at the office building and a claimant in the forfeiture case, timely appealed the interlocutory sale order, seeking to set aside the sale as "void" for lack of compliance with, in its view, necessary procedural requirements. After careful review, we conclude that Cleveland Law was not harmed by and so lacks standing to appeal the sale order. We therefore dismiss the appeal.

**I.**

In December 2020, the United States filed an *in rem* civil-forfeiture action against the building located at 55 Public Square in Cleveland, Ohio. In essence, the complaint alleged that 55 Public Square was purchased as part of a scheme to launder hundreds of millions of dollars misappropriated from PrivatBank, a Ukrainian bank, by two Ukrainian oligarchs, Ihor Kolomoisky and Gennadiy Boholiubov. The government filed two other forfeiture actions arising out of the same scheme.

Several individuals and businesses claimed an interest in 55 Public Square. On January 19, 2021, four entities and persons allegedly involved in the money-laundering scheme filed claims: Optima 55 Public Square LLC, the record owner of the building; Optima Ventures LLC, which owned Optima 55 Public Square; and Mordechai Korf and Uriel Laber, who partially owned Optima Ventures (collectively, the Optima entities). On January 26, 2021,

Cleveland Law, a tenant at 55 Public Square that subleases office space to small law firms and solo practitioners, filed a claim asserting a leasehold interest in the property. A few days later, several other claimants who had been in litigation against the Optima entities filed a joint claim.

On Tuesday, February 9, 2021, the district court held a status hearing, at which counsel for Cleveland Law was present. At the hearing, counsel for the Optima entities stated that there was "an anticipated closing on the sale of [55 Public Square] scheduled for . . . this week," and that the funds from the sale would be held pending the outcome of the litigation. The court asked the government if it objected, and counsel for the government responded that it did not object and would soon file a motion to approve the sale. At no point during the hearing did counsel for Cleveland Law raise an objection to the sale.

Later that same day, the government filed an "Agreed Motion to Authorize Interlocutory Sale" under 18 U.S.C. § 981(a)(1) and Supplemental Rule G(7), with supporting documentary evidence. In certain circumstances, Supplemental Rule G(7) permits the district court to authorize the sale of real property before the forfeiture case is resolved. Supp. Rule G(7)(b). Ordinarily, such a sale "is governed by 28 U.S.C. §[] 2001," among other provisions, which requires notice, a hearing, and appraisals before the court may approve a private sale. Supp. Rule G(7)(b)(iii); 28 U.S.C. § 2001(b). But the court may use other procedures for the sale if "all parties . . . agree to the sale, aspects of the sale, or different

procedures." Supp. Rule G(7)(b)(iii). Once the sale closes, the "[s]ale proceeds are a substitute res subject to forfeiture in place of the property that was sold." Supp. Rule G(7)(b)(iv).

The government's motion sought the district court's approval to proceed with the sale under the terms of the private purchase agreement, and without regard to § 2001, by agreement of the parties. The government's evidence showed that, before the forfeiture action, Optima 55 Public Square had entered into a contract with KD 55 Public Square LLC to sell the office building for approximately $17 million. At that time, the building was in foreclosure and subject to outstanding taxes and penalties. The government agreed to the sale because the buyer had no affiliation with the Optima entities and, in its view, a "prompt sale [was] the only way to protect the value of the equity in the building."

According to a copy of the purchase agreement submitted by the government, the sale included the transfer of all leases at 55 Public Square, including "any and all amendments, modifications or supplements." The buyer further agreed to "assume[] and . . . be bound by and to perform and observe all of the obligations, covenants, terms and conditions to be performed or observed under the Assigned Property." It appears, in other words, that the buyer assumed and agreed to be bound by all existing leases without alteration.

On February 10, 2021, one day after the government filed its motion, Cleveland Law answered the forfeiture complaint. That filing did not suggest any opposition to the sale. Rather, Cleveland

Law stated that, as an "innocent owner" of a leasehold interest under 18 U.S.C. § 983(d)(6), its permissible remedies included compensation "to the extent of Claimant's ownership interest once a final order of forfeiture has been entered and the property has been reduced to liquid assets."

The next day, February 11, 2021, the district court granted the "unopposed" motion to approve the interlocutory sale according to the terms of the purchase agreement. In the weeks that followed, Cleveland Law did not submit any filing to prevent the sale from occurring. Instead, after the sale closed, Cleveland Law filed a notice of appeal of the sale order on March 1, 2021.[1]

**II.**

Cleveland Law maintains that the private sale of 55 Public Square was "governed by" § 2001 because "all parties" did not "agree to the sale . . . or different procedures" under Supplemental Rule G(7). It notes that the government never sought or obtained its agreement to the sale, despite its status as a claimant in the

---

[1] The parties agree, as do we, that an interlocutory order authorizing the immediate sale of real property in a forfeiture case is a collateral order subject to immediate appeal. *See, e.g.*, *United States v. Real Prop. & Residence Located at 4816 Chaffey Lane*, 699 F.3d 956, 959 (6th Cir. 2012) (exercising jurisdiction over an interlocutory sale order in a forfeiture case under the collateral-order doctrine). *Cf. Citibank, N.A. v. Data Lease Fin. Corp.*, 645 F.2d 333, 336–38 (5th Cir. May 1981) (holding that "an order in a foreclosure proceeding that directs the immediate sale of specified property is in all respects a final order for purposes of appeal.")

forfeiture case. And it contends that the failure to comply with § 2001's notice, hearing, and appraisal requirements rendered the sale "void" under the former Fifth Circuit's decision in *Acadia Land Co. v. Horuff*, 110 F.2d 354, 355 (5th Cir. 1940) (holding that the failure to comply with statutory notice, hearing, and appraisal requirements rendered a private sale "void because the court was lacking in jurisdiction to confirm it").[2]

The government responds that Cleveland Law tacitly agreed to the sale or waived the issue by failing to object below, and that the appeal is moot because the sale to a good-faith purchaser cannot be undone. It further argues that Cleveland Law was not actually harmed by the sale order, and that the sale would have gone forward in the same way had the government simply waited to initiate a forfeiture case until the sale closed. Cleveland Law replies that it lacked a meaningful opportunity to object and that this Court can still grant effective relief.

**III.**

After this case was fully briefed, we asked the parties to submit supplemental briefs addressing Cleveland Law's standing to appeal the interlocutory sale order. Because standing implicates our jurisdiction, "we are obliged to consider standing *sua sponte*,"

---

[2] This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

reviewing *de novo*. *AT&T Mobility, LLC v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 494 F.3d 1356, 1359–60 (11th Cir. 2007).

"Litigants must establish their standing not only to bring claims, but also to appeal judgments." *Wolff v. Cash 4 Titles*, 351 F.3d 1348, 1353 (11th Cir. 2003). "To have appellate standing, a litigant must establish that he has suffered a concrete and particularized injury that is fairly traceable to the challenged conduct, and is likely to be redressed by a favorable judicial decision." *United States v. Pavlenko*, 921 F.3d 1286, 1289 (11th Cir. 2019). The injury requirement means that "the appealed order must affect the litigant's interests in an adverse way." *Id.*; *see Knight v. State*, 14 F.3d 1534, 1556 (11th Cir. 1994). In other words, "[o]nly a litigant who is aggrieved by the judgment or order may appeal." *Wolff*, 351 F.3d at 1354 (cleaned up).

Cleveland Law says it has standing because the sale order "modified [its] ownership interest in the property," "disrupted its business operations," and violated its due-process rights in the forfeiture proceeding. It asserts that, while the sale order "purportedly" transferred its lease agreement, the order "fail[ed] to ensure all lease provisions went undisturbed." After the sale closed, according to Cleveland Law, the buyer attempted to terminate the lease agreement and then began converting the building to residential housing, causing significant disruption and violating a lease provision that limited use of the building to commercial purposes only.

The government responds that Cleveland Law lacks standing because the sale order kept Cleveland Law's rights and

remedies under the lease fully intact. In the government's view, Cleveland Law's problems with its new landlord stem from the independent actions of a third party, not the sale order itself, and are "outside the ambit of this case." It notes that the court abandoned jurisdiction over the building once the sale proceeds were substituted for the building as the res. It also contends that Cleveland Law received due process and was not prejudiced by any procedural deprivation because even if due process as Cleveland Law envisions it was entitled to had been afforded, the same result would have occurred. Cleveland Law replies that the Supreme Court has rejected similar reasoning.

We agree with the government that Cleveland Law lacks standing to appeal. The sale order did not adversely affect Cleveland Law's leasehold interest in the property. That order permitted the sale to go forward under the terms of the purchase agreement, which transferred all existing leases to the buyer.

The record contradicts Cleveland Law's claim that the sale order failed to incorporate addenda to its lease or to document a few other lease provisions. Under the purchase agreement, the lease transfer included "any and all amendments, modifications or supplements" to leases, and the buyer "agree[d] to be bound by and to perform and observe all of the obligations, covenants, terms and conditions to be performed or observed." So while Cleveland Law's landlord changed, its lease did not. Indeed, Cleveland Law did not raise any objection to the sale until after it had closed, indicating that its problem was with the new landlord, not the sale

itself. Cleveland Law therefore has not shown that the sale order affected its property interests in an adverse way. *See Pavlenko*, 921 F.3d at 1289.

Nor are Cleveland Law's grievances with its new landlord sufficient to provide standing to appeal the sale order. To be sure, Cleveland Law appears to have been injured by the new landlord's attempt to terminate the lease and disruptive renovations for residential housing, alleged to be in violation of a lease provision limiting use of the building to commercial purposes only.

But those injuries were caused by "the independent action of some third party not before the court," and are not fairly traceable to the sale order itself. *See United States v. Windsor*, 570 U.S. 744, 757 (2013) ("[T]he injury has to be fairly traceable to the challenged action . . . , and not the result of the independent action of some third party not before the court." (cleaned up)). The sale order did not affect Cleveland Law's property interest or authorize the buyer to take the actions of which Cleveland Law complains. And Cleveland Law's injuries to its use and enjoyment of the property are redressable through an action against that third party. Cleveland Law fails to explain how undoing the sale and requiring additional procedures under § 2001, related to ensuring a fair sale price, would remedy these injuries.[3] *See Pavlenko*, 921 F.3d at 1289.

---

3 In its initial briefing, Cleveland Law also cited the protection of 18 U.S.C. § 985, which states that "the owners or occupants of the real property shall not

Finally, Cleveland Law's alleged due-process injury is not enough on its own to create standing to appeal. Because Cleveland Law has not shown that the sale order adversely affected its property interest in 55 Public Square, it likewise has not shown that it was harmed by any procedural deficiencies in relation to that order.

For these reasons, we conclude that Cleveland Law lacks standing to appeal the district court's order authorizing the interlocutory sale of 55 Public Square. We therefore dismiss the appeal for lack of jurisdiction.[4]

**DISMISSED.**

---

be evicted from, or otherwise deprived of the use and enjoyment of, real property that is the subject of a pending forfeiture action." But as the government points out, that protection "does not apply to forfeitures of the proceeds of the sale of [real property or interests in real property]." 18 U.S.C. § 985(f)(2). In other words, § 985 no longer applied once the sale of the property closed and the proceeds were substituted as the *res*.

[4] The government's motion for summary affirmance or to dismiss on grounds of mootness is DENIED AS MOOT.

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 17, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 21-10696-GG
Case Style: USA v. Real Prop Located 55 Public Sq
District Court Docket No: 1:20-cv-23278-MGC
Secondary Case Number: 1:20-cv-25313-MGC

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website. Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Joseph Caruso, GG at (404) 335-6177.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1 Ntc of Issuance of Opinion