UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-CV-23278-GAYLES/GOODMAN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

APPROXIMATELY $9,105,221.62 IN FUNDS (PLUS INTEREST) CURRENTLY HELD BY THE UNITED STATES MARSHALS SERVICE REPRESENTING 95% OF THE NET PROCEEDS FROM THE SALE OF THE REAL PROPERTY LOCATED AT 500 WEST JEFFERSON STREET, LOUISVILLE, KY 40202 KNOWN AS PNC PLAZA,

        Defendant.
_____/

**UNITED STATES' MOTION TO STAY CASE NO. 20-CV-23279
PENDING RESOLUTION OF A RELATED CRIMINAL INVESTIGATION**

The United States has filed four civil forfeiture actions consolidated here. All four arise from the same criminal scheme by Ukrainian oligarchs Ihor Kolomoisky and Gennadiy Boholiubov to embezzle and fraudulently obtain funds from PrivatBank, a Ukrainian bank they previously owned. They and their associates then laundered the stolen funds into the United States, where the funds were invested into commercial real estate and metallurgies businesses. All four actions are based on similar legal theories and factual predicates, and involve the same (or closely related) claimants and counsel.

All four civil actions are also closely entwined with an ongoing criminal investigation. Permitting proceedings in any of these civil actions to go forward "will adversely affect the ability of the government to conduct [that] related criminal investigation." 18 U.S.C. § 981(g)(1)

1

Three of the four actions have been stayed since May 2021; only this one was permitted to proceed. ECF 75. The Court, through Judge Cooke, previously denied the government's motion to stay this action alone, though without explanation. *Id*. Yet, as Claimants' first motion to dismiss highlighted, it is necessary to stay this action along with the others in order to avoid adverse effects on the ongoing criminal investigation. The government respectfully requests that the Court, as required by 18 U.S.C. § 981(g)(1), and in the interest of conserving judicial resources, stay this action.

I.  BACKGROUND

These consolidated *in rem* civil forfeiture actions arise from the United States' investigation of an international conspiracy to launder money embezzled and fraudulently obtained from PrivatBank, one of the largest banks in Ukraine. In each action, the United States seeks the forfeiture of property or funds that constitute or are derived from those criminal proceeds.

In case number 20-23278, the United States seeks forfeiture of the former CompuCom office park in Dallas, Texas. In case number 20-23279, the United States seeks forfeiture of the proceeds from the sale of the PNC Plaza building in Louisville, KY. In case number 20-25313, the United States seeks forfeiture of an office building located at 55 Public Square in Cleveland, Ohio. In case number 22-20238, the United States seeks forfeiture of a promissory note issued in connection with a loan used to finance the sale of Stemmons Towers in Dallas, Texas (together, the "Defendant Assets"). The real estate at issue in these actions have been reduced to cash held by the US Marshals Service; the Stemmons note is still outstanding, and monthly interest payments by the borrower are likewise being held by the Marshals.

The United States seeks forfeiture of the Defendant Assets pursuant to: (1) 18 U.S.C. § 981(a)(1)(C), because they are traceable to violations of United States law and specified unlawful

activity, including violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315; and (2) 18 U.S.C. § 981(a)(1)(A), because they were involved in and facilitated one or more money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957.

The complaints in each of the actions allege that the former owners of PrivatBank, Kolomoisky and Boholiubov, stole over $5 billion from PrivatBank through a scheme in which they used their control of the bank to obtain fraudulent loans on behalf of companies they owned or controlled. The scheme involved laundering the fraudulently obtained loan proceeds by transferring them to and through numerous accounts at PrivatBank's Cyprus branch in a series of transactions designed to disguise the nature, source, ownership, and control of the funds. Kolomoisky and Boholiubov further laundered the fraudulent loan proceeds by transferring a portion of the funds to a web of related business entities in the United States, which were established by their associates Mordechai Korf and Uriel Laber. Korf and Laber in turn used those U.S. entities to invest the misappropriated PrivatBank funds in properties and businesses in the United States, including by using millions of dollars to purchase the real estate at issue in these actions. Those properties generated millions of dollars in rental income.

The four civil forfeiture actions are closely related, as Claimants themselves have explained:

> These are civil forfeiture cases brought by the government. The same individuals (Korf and Laber) are claimants in [all] cases. The government is seeking forfeiture of real property and interests in real property based on a common nucleus of operative facts, stemming from the government's allegation of a massive bank fraud in Ukraine.
>
> The transactions and occurrences at issue in the [four] cases are overlapping and nearly identical. . . . Identical (or nearly identical) factual allegations appear in dozens of paragraphs in [the] complaints, verbatim. . . .
>
> The same parties, same counsel, and same witnesses will participate in [the] cases. The evidence / documents in [the] cases overlap. The Court will have

3

> to interpret the same Ukrainian laws, weigh the same evidence, make credibility determinations of the same witnesses and trace some of the same financial transactions in [the] cases.

ECF 14 at 2 (Claimants' Motion To Transfer Case To A Single Judge).

As detailed in the declaration of Steven Jackson ("Declaration"), which is submitted *ex parte* and under seal pursuant to 18 U.S.C. § 981(g)(5), the United States is conducting a criminal investigation related to the facts and circumstances that form the bases of the forfeiture actions. The complaints' allegations of money laundering, foreign bank fraud, international transportation and receipt of misappropriated funds, and a conspiracy to commit those offenses, involve many of the same facts, parties, and circumstances that are the subject of the ongoing criminal investigation. As part of that investigation, the United States has relied, and continues to rely, on confidential sources of information, as well as other investigative measures that would be jeopardized if exposed in the course of the civil forfeiture proceedings.

The United States moved to stay this action previously. ECF 46. That motion was denied without written explanation following a hearing. ECF 75. The initial complaint was dismissed without prejudice, and the United States filed an amended complaint, which amended the description of the defendant asset. ECF 187. The same claimants that filed claims in response to the initial complaint have filed new claims. ECF 192, 193, 194, 195. They have also filed a joint motion to dismiss. ECF 196.

## II. ARGUMENT

Section 981(g)(1) provides that the Court "*shall* stay the civil forfeiture proceeding" if the government shows that it will adversely affect a related ongoing criminal investigation. 18 U.S.C. § 981(g)(1) (emphasis added). Further proceedings in this action—as with the other three civil forfeiture actions that have been properly stayed—would have an adverse effect on the United

States' ability to conduct its related criminal investigation. Indeed, Claimants' past (and current) motions to dismiss this action illustrate that risk. Moreover, due to the closely intertwined nature of the actions—"[t]he transactions and occurrences at issue . . . are overlapping and nearly identical"—it is incredibly inefficient, and a waste of the Court's and the parties' resources, to proceed in this action alone. ECF 14 at 2. For these reasons, this proceeding (like the others) should be stayed for all purposes except the filing of timely claims and answers.

> **A.     Section 981(g) Mandates A Stay Of A Civil Forfeiture Action Where Continued Litigation Will Adversely Affect A Related Criminal Investigation**

Section 981(g)(1) mandates the stay of a civil forfeiture proceeding where the United States demonstrates that continuation of the proceedings "will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case." 18 U.S.C. § 981(g)(1); *see also United States v. Funds, In Amount of $1,699,675.00*, No. 1:13-CV-21459, 2014 WL 687553, at *2 (S.D. Fla. Jan. 16, 2014) (describing the stay as "mandatory" where the government demonstrates an adverse effect); *United States v. 3039.375 Pounds of Copper Coins*, No. 1:08CV230, 2008 WL 4681779, at *1-2 (W.D.N.C. Oct. 21, 2008) (a stay is "automatic" if the government makes the required showing).

Section 981(g)(1)'s current formulation "reflects an amendment by the Civil Asset Forfeiture Act of 2000 that 'broadened the stay relief significantly' and removed the requirement that the Government show good cause." *United States v. Real Prop. Located at 6415 N. Harrison Ave., Fresno Cty.*, No. 1:11-CV-00304-BAM, 2012 WL 4364076, at *3 (E.D. Cal. Sept. 21, 2012) (quoting *United States v. All Funds Deposited in Account No. 200008524845*, 162 F.Supp.2d 1325, 1330 (D. Wyo. 2001)). Consistent with the statutory purpose of preventing premature disclosure of information that could compromise a criminal investigation, Section 981(g)(5) allows the

government to carry its burden of showing an adverse effect through *ex parte* submissions. *United States v. GAF Fin. Servs., Inc.*, 335 F. Supp. 2d 1371, 1373 n.2 (S.D. Fla. 2004).[1]

### B. The Civil Forfeiture Cases And Criminal Investigation Are "Related"

A civil asset forfeiture action is "related" to a criminal investigation for purposes of Section 981(g) when both proceedings involve similar "parties, witnesses, facts and circumstances," even if they are not identical. 18 U.S.C. § 981(g)(4); *see also GAF Fin. Servs., Inc.*, 335 F. Supp. 2d at 1373 (finding that a criminal investigation was "clearly related" to the civil case where they shared "common facts, similar violations, and some common parties.") (citation omitted).

Claimants have conceded that this action is related to an ongoing criminal investigation. At a hearing on the government's prior motion to stay, Claimants' counsel stated: "We have no quarrel with there being a related criminal investigation." ECF 77 at 10. In litigation related to a search warrant issued in this district in furtherance of the criminal investigation, Claimants argued that there is substantial overlap between the criminal investigation and the civil forfeiture actions. *See* Brief of Appellants, *United States v. Mordechai Korf, et al.*, 20-14223, 2020 WL 7641877 at *4 (11th Cir. December 21, 2020).

The Declaration demonstrates the high degree of similarity between the facts and circumstances, witnesses, and parties in each of these civil forfeiture actions and those in the pending criminal investigation. The cases are therefore related for purposes of Section 981(g)(1). *See United States v. All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, in Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d 64, 65–66 (D.D.C. 2006).

---

[1] The stay provision does not only protect the government. Section 981(g) also allows a claimant to seek a stay of a civil forfeiture proceeding if "the claimant is the subject of a related criminal investigation" so long as the claimant has standing and "continuation of the forfeiture proceeding will burden the right of the claimant against self incrimination." 18 U.S.C. § 981(g)(2). The stay provision is a hallmark of due process and protects both sides.

### C. Continuation Of The Proceedings At This Time Will Adversely Affect A Related Criminal Investigation

Showing an "adverse effect" under Section 981(g) is a low bar. *See United States v. One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d 1180, 1183 (C.D. Cal. 2011). Section 981(g)(1) "does not require a particularized showing of prejudice or specific harm; rather, all that the Court must determine is whether the civil discovery will interfere with the criminal investigation." *Id*. "More specific disclosure of prejudice through detailed evidentiary support [would] only result in the very prejudice to the criminal proceeding that the Government seeks to avoid." *Id*. at 1183-84. Accordingly, courts have "routinely issued" stays based only on the government's claim of the "*likely* prejudice" that civil discovery would pose to the related criminal case. *Id.* at 1184; *see also GAF Fin. Servs., Inc.*, 335 F. Supp. 2d at 1373 (issuing stay based upon "anticipated adverse impact" of civil discovery, notwithstanding the absence of pending discovery requests); *United States v. VIN: WP1AD2A26DLA72280*, No. 2:13-CV-636-FTM-38, 2014 WL 289379, at *1 (M.D. Fla. Jan. 27, 2014) ("Where civil discovery would subject the government's criminal investigation to 'early and broader civil discovery than would otherwise be possible in the context of the criminal proceeding,'" a stay should be granted).

A stay of this action is appropriate and necessary because further proceedings—even before discovery commences—will compromise the United States' ability to conduct its related criminal investigation. The government's concern is not theoretical. Claimants' first motion to dismiss this action raised numerous fact-based arguments. Claimants submitted hundreds of pages of exhibits in support of that motion, essentially converting it into a request for summary judgment. *See, e.g.*, ECF 78-1 to 78-9 (comprising nearly 600 pages of affidavits, declarations, and exhibits). Since this action was not stayed, the United States was compelled to respond to that motion to

dismiss, but was constrained in what it could include in its opposition by the ongoing criminal investigation. Situations like that are what Section 981(g) was designed to prevent.

One of Claimants' central contentions in their first motion to dismiss this action (which is repeated in their motions to dismiss the other civil forfeiture actions) is that the Court ought to defer to certain Ukrainian litigation. The United States has argued that the Ukrainian court decisions to which Claimants seek deference are unreliable for numerous reasons. *See* ECF 119 at 5-6 & n.3. In particular, the United States has explained that the legitimacy and accuracy of the Ukrainian court decisions are highly contested, and submitted, as an illustration of that point, an expert opinion filed in separate litigation highlighting irregularities related to those decisions, including procedural violations and improper judge shopping. *See* ECF 139 and 139-1.

Recent developments in Ukraine underscore the unreliability of those decisions and the fact-bound nature of Claimants' argument. This week, Ukrainian authorities announced the removal of the Chief Justice of Ukraine's Supreme Court from his position, and his arrest on charges of accepting bribes.[2] Additionally, the Ukrainian Supreme Court recently overturned one of the Ukrainian actions that purportedly support Claimants' views. The instant civil forfeiture action, even at this early stage, involves issues (raised by Claimants) that should not be addressed, because they would adversely affect the government's ongoing investigation if the government were forced to fully engage them.

Though Claimants' pending motion to dismiss is not premised on those same arguments, Claimants have blurred the line between legal and factual arguments that trigger concerns related to the criminal investigation. The pending motion raises a number of factual (as opposed to legal)

---

[2] See Daniel Victor, *The chief of Ukraine's Supreme Court has been detained and accused of taking a $2.7 million bribe*, N.Y. TIMES, May 16, 2023, https://www.nytimes.com/2023/05/16/world/europe/ukraine-supreme-court-chief-bribery.html

contentions about the government's criminal investigation, including the timeline of its knowledge of the alleged criminal activities. ECF 196. Claimants attach to their motion 11 exhibits which purport to be emails of the United States Department of State. ECF 196-1 to 196-11. Their motion leans heavily on these as establishing factual predicates necessary to support their motion to dismiss.

That is yet another inappropriate effort by Claimants to delve into factual matters at the motion to dismiss stage, the litigation of which threatens to adversely impact the ongoing criminal investigation. "[S]ubmission of evidence is not proper on a motion to dismiss because it is only the sufficiency of the pleadings that are at issue." *Cumis Ins. Soc., Inc. v. Citibank, N.A.*, 921 F. Supp. 1100, 1104 (S.D.N.Y. 1996). In "considering a motion to dismiss for failure to state a claim, a district court must limit itself to the contents of the pleadings." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000); *see also Cabrera v. 27 of Miami Corp.*, No. 09-20170-CIV, 2009 WL 2076095, at *2 (S.D. Fla. July 13, 2009) ("the Court's analysis is limited to the four corners of the [ ] complaint"). Twice now, Claimants have gone beyond the pleadings, and asked the Court to weigh factual contentions and evidence. Because Claimants' arguments are not simply "legal," there is a risk of harm to the United States' criminal investigation (or that the government will be constrained in its response to the motion). Section 981(g)(1) and related caselaw make clear that a stay is proper to prevent that harm.

A stay is further warranted when disclosure of information in the context of civil forfeiture litigation "could compromise any existing confidential informants and/or interfere with the Government's ability to obtain confidential information from others." *All Funds on Deposit in Suntrust Account XXXXXXXX8359 in the name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d at 66. As the Declaration explains, further proceedings would expose the identities of witnesses

who have provided information in the criminal investigation. If that occurs, the confidential witnesses may cease providing information, and, to the extent they are not reachable through process in the United States, may make themselves unavailable for future testimony. Potential sources of information would likely be deterred from coming forward. Depositions of confidential sources of information would be even more detrimental to the criminal investigation, as they would reveal, among other things, the government's investigative plans and the extent of the government's knowledge.

If this action proceeds, potential defendants could use civil discovery to circumvent the criminal discovery process. Criminal discovery is narrower in scope than civil discovery and timed deliberately to maintain investigational secrecy. A stay is necessary to prevent Claimants from using the liberal civil discovery rules to obtain information—including the identities and depositions of prosecution witnesses, investigative materials discoverable under Fed. R. Crim. P. 16, and *Jencks* and *Giglio* material—prior to the deadlines for providing such discovery in a criminal case. *See United States v. Contents of Nationwide Life Ins. Annuity Account No. 0961*, No. 1:05-CV-00196, 2007 WL 682530, at *1 (S.D. Ohio March 1, 2007) (claimants cannot be allowed to use civil discovery as a "back door method to obtain discovery outside the scope of Fed. R. Crim. P. 16."); *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184 (deposition of criminal case agent "would require him to reveal information and evidence collected in support of [the] indictment, which the Government need not reveal in criminal discovery").

The transactions central to the criminal investigation, as laid out in the Declaration, involve actors working closely with Claimants. Permitting Claimants to obtain material discoverable in a civil action before the criminal investigation is complete would allow potential criminal defendants

to have access to information long before they would be entitled to it in a criminal case.  *See* Fed. R. Crim. P. 16(a)(2).  A stay is necessary to prevent such early and improper disclosure.

A stay is also warranted to prevent Claimants from disclosing information obtained through civil discovery to others with whom they have close relationships and who may be subjects of the investigation.  *See United States v. Assorted Firearms-Motorcycles & other Pers. Prop.*, 677 F. Supp. 2d 1214, 1216 (C.D. Cal. 2009) (a "close connection between non-defendant Claimants and defendants in the criminal action" created "a significant risk" that information learned through civil discovery would be "improperly disclosed to the criminal defendants"); *One 2008 Audi R8 Coupe Quattro*, 866 F. Supp. 2d at 1184.

Additionally, a stay is warranted because subjecting the United States to further proceedings would unduly burden and divert the efforts of law enforcement officials who are currently conducting the criminal investigation.  *See All Funds on Deposit in Suntrust Account No. XXXXXXXX8359, in Name of Gold & Silver Reserve, Inc.*, 456 F. Supp. 2d at 66 (issuing a stay where the government stated that "responding to civil discovery would burden law enforcement officials who are otherwise conducting a contemporaneous criminal investigation").

As the Declaration makes clear, there are concrete concerns regarding the safety of sources of information, as well as the integrity of data, both of which could be compromised by civil discovery.

Claimants, in their previous objection to a stay, offered no serious response to these arguments.  Their opposition instead called for some kind of "protective order" in place of a stay.  But, as the government previously explained, and as the Declaration makes clear, there is no way to fashion such an order in this case.  *See* ECF 59.

Given those factors, and the facts disclosed in the Declaration, a stay is warranted under Section 981(g).

### D.     Judicial Economy Mandates A Stay

Given the relatedness of the four civil forfeiture actions, it is highly inefficient to proceed in only one of them while the others are stayed.  As Claimants have themselves argued, in all four actions, "[t]he Court will have to interpret the same Ukrainian laws, weigh the same evidence, make credibility determinations of the same witnesses and trace some of the same financial transactions[.]" ECF 14 at 2.  That overlap was made clear in the context of Claimants' first motion to dismiss.  Claimants argued that this action, as well as the others, should be dismissed based on the same theory of international "comity."  *Cf.* ECF 38 at 8-15 and ECF 78 at 7-14 (making nearly identical arguments for dismissal based on comity).  The Court rejected that argument in this action, yet the motions to dismiss the other actions on identical grounds are still pending. Similarly, Claimants' newest argument, that this action is barred by the statute of limitations, is also raised in the stayed actions.  *Cf.* ECF 38 at 16, ECF 78 at 18, ECF 196 at 10 (arguing that the actions are time barred).

Piecemeal (and repetitive) litigation is inefficient and costly for the parties and the Court. It will require multiple rounds of briefing on the same subjects addressing the same (or similar) arguments.  It will entail disputes over the law of the case, preclusive effect, and other doctrines that the Court would not burden itself with if, instead, it treated the four consolidated actions as a unit, which is the entire point of consolidation.  The Court has evidently already acknowledged the atypicality of treating individual actions within a consolidated case differently when it asked, at the status hearing on May 23, 2022, why it should not just stay all of the cases under Section 981(g).  ECF 134 at 4.

Claimants not only agreed to stay the other three actions, they independently requested a stay. *See* ECF 36 at 20 (requesting that, if the Court does not dismiss, it "in the alternative, stay the case pending arbitration"). If this action were to proceed beyond the motion to dismiss, Claimants would likely invoke the reciprocal provision of Section 981(g)(2) that allows *them* to stay the actions to avoid prejudice in litigating in the shadow of a criminal investigation.

### III.   CONCLUSION

Based on the foregoing, and the Declaration filed under seal, the United States respectfully requests that the Court stay this action pursuant to 18 U.S.C. § 981(g)(1).

Pursuant to Local Rule 7.1(a)(3), the government has conferred with counsel for Claimants, and they oppose the relief sought.

Dated: May 18, 2023            Respectfully submitted,

BRENT S. WIBLE, CHIEF

MONEY LAUNDERING & ASSET RECOVERY SECTION

BY:    */s/ Shai D. Bronshtein*
Shai D. Bronshtein (ID #A5502665)
Rachel E. Goldstein
Trial Attorneys
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
(202) 616-5950
Shai.Bronshtein@usdoj.gov

*Attorneys for Plaintiff United States Of America*