UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.: 1:20-cv-23278-DPG

UNITED STATES OF AMERICA,

       Plaintiff,

  v.

APPROXIMATELY $9,105,221.62 IN FUNDS (PLUS
INTEREST) CURRENTLY HELD BY THE UNITED
STATES MARSHALS SERVICE REPRESENTING 95%
OF THE NET PROCEEDS FROM THE SALE OF THE
REAL PROPERTY LOCATED AT 500 WEST
JEFFERSON STREET, LOUISVILLE, KY 40202
KNOWN AS PNC PLAZA,

       Defendant.
_____/

**<u>CLAIMANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT
WITH PREJUDICE</u>**

Claimants Mordechai Korf, Uriel Laber, Optima CBD Investments LLC ("Optima CBD"), and CBD 500, LLC ("CBD 500," and, collectively, "Claimants") respectfully submit this memorandum of law in support of their Motion to Dismiss the First Amended Complaint (D.E. 187) (the "FAC"), dated January 5, 2023, filed by plaintiff the United States of America (the "United States" or "Government"), with prejudice.

## PRELIMINARY STATEMENT

This Court dismissed the Government's initial complaint, ruling that it named a non-cognizable *in rem* defendant through an "unorthodox" forfeiture strategy that improperly rendered its claims *in personam* rather than *in rem*. But the FAC fares no better. It too must be dismissed, this time with prejudice, because of two dispositive defects that cannot be cured. *First*, the FAC is time-barred under the applicable statute of limitations. *Second*, the FAC does not meet the heightened pleading standard for forfeiture actions, as it fails to adequately allege that the instant *in rem* defendant is substantially connected to criminal conduct.

The FAC alleges that two Ukrainian billionaires, Ihor Kolomoisky and Gennaidy Boholiubov, misappropriated funds through a fraudulent loan scheme involving PrivatBank, a Ukrainian bank they owned, and then laundered those funds, in part, by investing them in U.S.-based assets. In 2011, an entity owned by Kolomoisky, Boholiubov, and their American partners, Claimants Korf and Laber, allegedly used $13 million of the proceeds from two of those purportedly fraudulent Ukrainian loans to purchase PNC Plaza, real property located in Louisville, Kentucky. In 2018, as part of a foreclosure process, PNC Plaza was sold to a new entity owned by Claimants Korf, Laber, and an unrelated joint venture partner ("Firm A"), with funds that are not alleged to derive from any fraudulent PrivatBank loans or from any other unlawful conduct. In

November 2020, PNC Plaza was sold, under the supervision of the Government, to Firm A. The instant defendant is $9.1 million of the proceeds derived from that November 2020 sale.

The FAC must be dismissed as time-barred under the one-year limitations period in 18 U.S.C. § 984(b), which applies because the FAC seeks the forfeiture of cash that cannot be directly traced to an unlawful offense. As detailed below, the Government has not traced and cannot trace the defendant proceeds to allegedly fraudulent PrivatBank loans or any other alleged criminal offense. The FAC is therefore untimely because it was filed in January 2023, well more than a year after the latest possible "offense" at issue, *i.e.*, the November 2020 sale of PNC Plaza the Government itself supervised.

Nor can the FAC's time-barred claims be saved by the relation back doctrine. Under Rule 15(c)(1)(C), that doctrine would only apply to the FAC in the event the Government's initial complaint *mistakenly* named an improper defendant in the original complaint. But the Government has already admitted the flaw in its initial pleading was no mistake. In fact, the Government insisted for more than two years, including in response to Claimants' arguments that the initial defendant was not a cognizable *in rem* defendant, that it named the initial (and wrong) defendant as the result of an intentional, deliberate and strategic decision. It therefore cannot rely on the relation back doctrine, and the FAC's claims must be measured from its filing in January 2023.

The FAC must be dismissed for an additional reason. The Government has failed to plead—with the heightened particularity for *in rem* forfeiture actions required by Supplemental Rule E(2) or otherwise—a substantial connection between the current *in rem* defendant and underlying criminal activity. Even though this is a requisite element for each of the Government's claims, the Government does not even attempt to meet it. Notably, the FAC does not allege that the defendant asset is substantially connected to the allegedly fraudulent PrivatBank loan proceeds

used to purchase PNC Plaza in 2011. Nor does the FAC sufficiently allege that the funds used by Korf and Laber to purchase PNC Plaza in the 2018 foreclosure sale were substantially connected to illegal conduct. There is no allegation at all that those funds were the proceeds of fraudulent PrivatBank loans, or any other illegal conduct. Instead, the FAC contains but a single allegation, which is unsupported and conclusory, that the 2018 transaction was intended for an unlawful purpose simply because Korf and Laber were supposedly on both sides of the transaction. This pleading deficiency alone requires dismissal.

## FACTUAL BACKGROUND[1]

**A.    The 2011 PNC Plaza Investment**

The FAC alleges that two prominent Ukrainian business magnates, Ihor Kolomoisky and Gennaidy Boholiubov, used their ownership and control of PrivatBank, one of the largest banks in Ukraine, "to steal billions of dollars of the bank's funds," which they then purportedly laundered through a vast network of accounts and entities, and ultimately invested in the United States. *See* FAC ¶¶ 13-15, 19-22, 29.

According to the FAC, two Miami-based businessmen, Mordechai Korf and Uriel Laber, allegedly played "critical roles" in Kolomoisky's and Boholiubov's laundering scheme "by establish[ing] a complex system of entities in order to facilitate the laundering of the misappropriated funds, and to invest the funds in property and businesses in the United States." *Id.* ¶¶ 90, 99. One of these investments concerns PNC Plaza, real property located in Louisville,

---

[1] This factual background is taken exclusively from the Government's allegations in the FAC, which are presumed to be true for the purpose of this motion only. Claimants strongly contest the Government's allegations and deny any wrongdoing. The Court is familiar with the factual background and Claimants respectfully refer to the R&R's recitation of the background. *See* R&R at 4-13. Claimants include here only the detailed facts pertinent to each of its arguments.

Kentucky, acquired for $77,050,000 in September 2011 by Optima 500, LLC, ("Optima 500"), an entity owned collectively by Kolomoisky, Boholiubov, Korf and Laber. *See id.* at ¶¶ 105-106.[2]

As alleged, the 2011 purchase of PNC Plaza was funded with: (1) deposits totaling $3.5 million as part of the purchase contract; (2) Optima 500's assumption of the $65,700,000 outstanding mortgage on the property; and (3) $13,151,167.17 provided by Optima 500 to cover the remainder of the purchase price. *See id.* ¶¶ 107-109. The Government alleges the $13 million provided by Optima 500 is "directly traceable to two loans obtained from PrivatBank by Kolomoisky and Boholiubov (the "PrivatBank Loans"), and was the proceeds of embezzlement, misappropriation, and fraud." *Id.* ¶ 24. According to the FAC, the PrivatBank Loans were fraudulent and violated Ukrainian law because they were based on a series of misrepresentations as to their purpose, the source of repayment and the collateral. *See id.* ¶¶ 48, 52-55, 70-79.

The FAC purports to trace $13,151,167.17 from the two PrivatBank Loans in Ukraine "through several accounts at PrivatBank Cyprus," "a convoluted journey to the United States" and ultimately "to an account at Regions Bank in the United States in the name of Optima Ventures," an entity owned by Kolomoisky, Boholiubov, Korf, and Laber. *Id.* ¶¶ 110, 132-133. These funds were allegedly then used to purchase PNC Plaza "in the name of Optima 500." *Id.* ¶ 135. The FAC does not identify or trace any other money used to purchase PNC Plaza to any unlawful activity.

---

[2] A substantial portion of the allegations in the FAC detail various related-party loans and miscellaneous activities that have nothing to do with PNC Plaza or this action. *See id.* ¶¶ 49-69, 80-102. Specifically, pages 11-16 and 17-25 of the FAC discuss facts and circumstances that have no relevance to the "approximately $9,105,221.62 in funds" actually at issue in this case, rendering the FAC an impermissible "shotgun" pleading that fails to comport with the lower standard set forth in Federal Rule of Civil Procedure 8(a)(2). *See Barmapov v. Amuial*, 986 F.3d 1321, 1325 (11th Cir. 2021) (affirming dismissal of complaint with prejudice where it was a "shotgun pleading . . . rife with immaterial factual allegations, including five pages and 24 paragraphs of irrelevant details about the alleged criminal backgrounds of some of the defendants"). Under well settled Eleventh Circuit law, such pleadings are "fatally defective" and should be dismissed. *See B.L.E. v. Georgia*, 335 F. App'x 962, 963 (11th Cir. 2009).

B. **The 2018 Foreclosure and Purchase of PNC Plaza**

As alleged in the FAC, six years after purchasing PNC Plaza with purportedly tainted funds, on March 13, 2017, Optima 500 defaulted on its $65,700,000 mortgage and went into foreclosure on January 31, 2018. *See id.* ¶¶ 138-140. During the pendency of the foreclosure proceedings, the Government alleges that "Korf and Laber entered negotiations with a third-party investment firm, Firm A . . . [and] they agreed to enter a joint venture that altered the ownership structure of PNC Plaza." *Id.* ¶ 142. The FAC expressly disavows any connection between Firm A and the PrivatBank Loans, acknowledging that "Firm A was an unrelated third-party investor, which, on information and belief, had no connection to the Optima Family of companies or Kolomoisky and Boholiubov's misappropriation scheme from PrivatBank." *Id.* ¶ 142, fn. 10. The Government does not seek the forfeiture of any interest or proceeds owned by or belonging to Firm A. *See generally id.* ¶¶ 4-5, 163.

To effectuate this "restructuring", the FAC alleges that Korf and Laber created a new entity in 2017, Claimant Optima CBD, which in turn formed Claimant CBD 500 in 2018, both of which the government alleges and acknowledges were "separate from Kolomoisky and Boholiubov's ownership." *Id.* ¶¶ 143-145. In 2018, CBD 500 together with Firm A formed a joint venture (the "Joint Venture") for the purposes of holding PNC Plaza, of which Korf and Laber, through CBD 500, held 95% while Firm A held 5%. *See id.* ¶ 147.

In 2018, Firm A purchased the promissory note on PNC Plaza for approximately $27 million. *See id.* ¶ 149. As alleged, this $27 million was funded in two parts: (1) "a loan of approximately $17 million from . . . a third-party lender;" and (2) a contribution of $10 million from Korf, Laber and Firm A, of which $9.5 million came from Korf and Laber using funds from "a different entity: Felman Trading Americas Inc.," ("FTA"). *Id.* ¶¶ 154-155. Although the

5

Government alleges that FTA was "used to hide the involvement of Kolomoisky and Boholiubov in the ownership of PNC Plaza," *id.* ¶ 156, there are ***no*** allegations that any of the $9.5 million FTA contributed to the 2018 purchase of PNC Plaza by the Joint Venture were derived from funds misappropriated from PrivatBank, or otherwise traceable to any specific unlawful activities. *See generally id.* ¶¶ 156-160.

Thereafter, Firm A transferred the mortgage purchase agreement to the Joint Venture, and Korf and Laber, through Optima 500, transferred a Deed in Lieu of Foreclosure to the Joint Venture. *See id.* ¶¶ 150, 152. These transactions "extinguished the original promissory note" and resulted in the Joint Venture owning PNC Plaza. *Id.* ¶ 152. The Government nonetheless alleges that PNC Plaza remained under Korf and Laber's control because "[t]hey in effect never stopped owning the real property," but the FAC does not include any allegations, let alone specific allegations, that the 2018 sale of PNC Plaza to the Joint Venture was in furtherance of any unlawful activities. *Id.* ¶¶ 152-153.

**C.     The 2020 Government-Supervised Sale of PNC Plaza**

In 2019, Firm A offered to purchase PNC Plaza from the Joint Venture, which sale was consummated in 2020 for $22.25 million with the Government's knowledge and under its supervision.  *See id.* ¶¶ 161-166. There are ***no*** allegations that any of the sale proceeds were derived from or traceable to proceeds misappropriated from PrivatBank or any other specified unlawful activities. *See generally id.* ¶¶ 161-166.

The Government now seeks to forfeit approximately $9,105,221.62 representing CBD 500's portion of the net proceeds received by the Joint Venture from the 2020 sale of PNC Plaza. *See id.* ¶¶ 166-167.

## PROCEDURAL HISTORY

The Government commenced this action in August 2020, filing a civil forfeiture complaint that named the rights of Optima CBD and CBD 500 to collect any profit from PNC Plaza as the *in rem* defendant. Case No. 20-cv-23279, D.E. 1 at ¶ 10. Claimants moved to dismiss, arguing, *inter alia*, that the complaint failed to allege a cognizable *in rem* defendant, and failed to plausibly allege a substantial connection between the funds used in connection with the 2018 and 2020 sales of PNC Plaza and the alleged 2011 criminal conduct in Ukraine. *See* 20-cv-23279, D.E. 78 at 16-18.

Magistrate Judge Goodman agreed and recommended dismissal without prejudice. *See* Case No. 20-cv-23278, D.E. 164 at 69, 74 (the "R&R"). The R&R found that the Government chose to sue an improper *res* as the *in rem* defendant, thus rendering the suit one brought *in personam* or *quasi in rem*, as opposed to *in rem* as a civil forfeiture must be. *Id.* at 69-71, 74. The R&R reasoned that the Government's decision "to pursue an unorthodox forfeiture strategy" gave rise to "a jurisdictional defect" and that "[b]y choosing to not name the real property as the *in rem* Defendant, the United States has, in effect, opted to pursue what seems more like an *in personam* action or perhaps a *quasi in rem* claim." *Id.* at 69. The R&R found that the Government wrongly "based its forfeiture case [] on the alleged prior conduct of" Korf and Laber, because they purportedly "stood on both sides" of the 2018 sale of PNC Plaza, making the Government's claims *in personam* as opposed to *in rem*. *Id.* at 70-71.

On January 3, 2023, this Court affirmed, adopted the R&R and granted the United States' motion for leave to amend its complaint. Case No. 20-cv-23278, D.E. 185 and 186. On January 5, 2023, the United States filed the FAC, naming as the *in rem* defendant "Approximately $9,105,221.62 in funds (plus interest) currently held by the United States Marshals Service representing 95% of the net proceeds from the sale of the real property located at 500 West

7

Jefferson Street, Louisville, KY 40202 known as PNC Plaza." D.E. 187.

## APPLICABLE PLEADING STANDARD

The applicable pleading standard is set forth in the R&R, and Claimants respectfully refer to and incorporate the Court's prior recitation of it here. *See* D.E. 164, 58-60. In addition, to state a forfeiture claim, the United States must plead "sufficiently detailed facts" that a "substantial connection" exists between the property and alleged offense. 18 U.S.C. § 983(c)(3); *United States v. $38,000 in United States Currency*, 816 F.2d 1538, 1548 (11th Cir. 1987) (dismissal under Rule E(2)(a) for failure to allege substantial connection).

## ARGUMENT

**I.   The First Amended Complaint is Time-Barred**

Even though this case has been pending for more than two years and is based upon events that occurred more than a decade ago, the Government has failed to timely amend its complaint against the proper *in rem* defendant. As a result, the FAC is time-barred and must be dismissed.

**A.   The First Amended Complaint Is Untimely Under 18 U.S.C. § 984(b)**

The FAC must be dismissed because it is subject to a one-year statute of limitations that began running no later than the November 2020 sale of PNC Plaza to Firm A that was conducted under the supervision and with the approval of the Government. The one-year limitations period applies because the FAC does not plead, with particularity, that the current *in rem* Defendant, CBD 500's portion of the proceeds arising out of the aforementioned sale, is traceable to any specified unlawful conduct.

Pursuant to 18 U.S.C. § 984(b), an action that seeks the forfeiture of cash that cannot be directly traced to an offense must be filed within one year of that offense. *Id.* ("No action pursuant to this section to forfeit property not traceable directly to the offense that is the basis for the

8

forfeiture may be commenced more than 1 year from the date of the offense."). As detailed in Section II, *infra*, the FAC does not plausibly allege a traceable connection between the *in rem* Defendant—$9.1 million in proceeds derived from the November 2020 sale of PNC Plaza—and the alleged 2011 misappropriation of funds from PrivatBank *via* the PrivatBank Loans, or any other specified unlawful activities. Therefore, the claims in the FAC are subject to the one-year statute of limitations set by 18 U.S.C. § 984(b).[3]

The latest possible "offense" described in the FAC is the November 2020 Government-approved and supervised sale of PNC Plaza to Firm A. FAC at ¶¶ 27, 165 ("The sale was consummated on November 17, 2020, and, by order of the Court, the net proceeds of the sale . . . w[ere] restrained and held by the USMS in escrow."). Thus, the applicable one-year limitations period expired no later than November 17, 2021, more than a year prior to the Government's filing of the FAC in January 2023. Accordingly, the FAC is time-barred and must be dismissed.

### B. The Relation Back Doctrine Does Not Apply

The FAC's untimeliness cannot be remedied or forgiven by application of the relation back doctrine, which does not apply here because the Government's decision to file the initial complaint in this action against an improper *res* was an intentional and strategic choice, not a mistake. Thus, the relation back doctrine does not apply and the FAC is time-barred.

---

[3] Section 984(b) applies notwithstanding that the FAC seeks relief under 18 U.S.C. § 981. It is well established that section 984(b) applies to actions brought under section 981 where, as here, the Government fails to adequately trace the property at issue to the alleged offense. *See United States v. $8,221,877.16 in U.S. Currency*, 330 F.3d 141, 158-59 (3d Cir. 2003) (applying section 984 to a complaint seeking relief under 18 U.S.C. § 981, reasoning "section 984 is not by its terms a separate action for forfeiture. Rather, it applies to, and modifies the requirements of, forfeiture actions in which the subject property is cash or other fungible property."); *United States v. $61,900.00*, 2010 WL 11623206, at *3–4 (E.D.N.Y. Sept. 8, 2010) (While section 984(d) allows "the Government to forfeit traceable, fungible property using § 981" the Government must use § 984 "when money is not traceable directly to the offense.") (internal quotations omitted).

Rule 15(c)(1) applies if "the amendment changes the party or the naming of the party against whom a claim is asserted[.]" That is exactly what the Government did here by swapping the prior defendant (corporate rights) for cash (fungible property). As relevant here, Federal Rule of Civil Procedure 15 provides that an amended pleading that changes the party against whom a claim is asserted relates back to the original pleading only when the newly-named party "(i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." Fed. R. Civ. P. 15(c)(1)(C).

The law is clear that the relation back doctrine only applies to a newly-named defendant when the failure to name that defendant in the original complaint was a mistake. *See Powers v. Graff*, 148 F.3d 1223, 1226 (11th Cir. 1998) ("The Rule permits an amendment to relate back only where there has been an error made concerning the identity of the proper party . . . ."); *Lelieve v. Orosa*, 2011 WL 5103949, at *4 (S.D. Fla. Oct. 27, 2011) ("A key requirement for relation back under Rule 15(c)(1)(C) is that the plaintiff ha[s] made a 'mistake.'"). Indeed, whether the omission of the newly-named Defendant was a mistake or not is a threshold issue in determining whether relation back applies, and if a "court determines that no 'mistake' was made, it is irrelevant whether the to-be-joined party received notice and would not be prejudiced." *Id*. at *4, *see also Rodriguez v. Quiñones*, 508 F. Supp. 3d 1198, 1202 (S.D. Fla. 2020) ("a finding of a mistake is necessary before moving on to the other requirements" of Rule 15(c)(1)(C)) (citations omitted). The relation back doctrine does not apply where the plaintiff makes a "deliberate decision not to sue a party whose identity plaintiff knew from the outset," which even "the most liberal interpretation of 'mistake' cannot include." *Powers* 148 F.3d at 1227 (quoting *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992)).

Here, there is no doubt the Government's failure to name the instant defendant *in rem* as a defendant in its initial complaint or otherwise within the applicable limitations period was not a mistake. Rather, when the Government filed its initial complaint on August 6, 2020, it made a conscious choice to name as the *in rem* defendant not PNC Plaza itself, but instead "all right to and interest in PNC Corporate Plaza Holdings LLC held, controlled, or acquired, directly or indirectly, by Optima CBD Investments LLC and/or CBD 500 LLC, including any interest held in or secured by the real property located at 500 West Jefferson Street, Louisville, KY 404202." Case No. 20-cv-23279, D.E. 1 ¶ 10.

Claimants moved to dismiss that complaint in May 2021, in part on the grounds that the Government had named an improper *res* as the defendant. *See* Case No. 20-cv-23279, D.E. 78. In response, the Government did not concede or acknowledge that it made a mistake in identifying the wrong defendant. The Government did not seek to amend its complaint to name a proper *in rem* defendant after the November 2020 sale of PNC Plaza, or after Claimants raised the issue in May 2021. To the contrary, the Government argued strenuously, for well over a year, that it considered other potential defendants, and made the ***deliberate and intentional*** decision to name the corporate interests as the *in rem* defendant in its original complaint. In briefing the issue to the magistrate judge, the Government wrote:

> The government ***chose*** to forfeit that corporate interest in the building, rather than the building itself, because there was a pending sale when it brought the forfeiture action, and an action against the building itself would likely have disrupted that sale, including by prejudicing the rights and interests in the company and the property of the third-party investor.

Case No. 20-cv-23278, D.E. 153 at 5 (emphasis added). The Government further asserted that it had ***correctly*** named the *in rem* defendant—*i.e.*, it had ***not*** made a mistake—and that the Court should recognize the Government's "crafted" and "more precise approach." *Id.*; *see also* Renewed

11

Motion to Dismiss Hearing Tr. at 79:18-22 (July 8, 2022) (the Government stating that it made "a very *intentional* decision in order not to bring a forfeiture action against property . . . .") (emphasis added).

Magistrate Judge Goodman recognized the Government's deliberate choice in the R&R, noting that the Government had intentionally named an intangible corporate interest rather than a tangible asset for strategic purposes:

> The United States has not convinced the Undersigned that *its decision to pursue an unorthodox forfeiture strategy* did not result in a jurisdictional defect arising from the naming of an incorrect *in rem* defendant. *By choosing* to not name the real property as the *in rem* Defendant, the United States has, in effect, *opted to pursue* what seems more like an *in personam* action or perhaps a *quasi in rem* claim.

Case No. 20-cv-23278, D.E. 164 at 69 (emphasis added).

The record thus shows the Government's deliberate choice to proceed against the initial defendant was intentional and not in any way a mistake, and the Government may not now claim otherwise. The Government's intentional decision, which it defended repeatedly and vociferously, is "the antithesis of making a mistake concerning the proper party's identity," which is the basis for permitting relation back. *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 549 (2010); *see also Powers*, 148 F.3d at 1228 (where "Plaintiffs made a 'deliberate decision' not to sue" certain defendants, they were not entitled to the benefit of "relation back under Rule 15").

In this case, the Government is not a plaintiff who misunderstands a potential defendant's "status or role in the events giving rise to the claim at issue" and who then sues the wrong "defendant based on that misimpression." *Krupski*, 560 U.S. at 549. Instead, the Government was aware of the potential *in rem* defendant it now seeks to proceed against no later than November 2020, and rather than amend its complaint at any time in the one year after the sale of PNC Plaza, the Government insisted that it **had not made a mistake** in choosing to proceed against the initial

12

*in rem* defendant. For more than a year the Government argued ***against*** any finding that it had mistakenly named the wrong defendant, and it chose to litigate the issue extensively, and beyond the expiration of the statute of limitations. Having led the parties down that path, the Government may not now claim mistake to obtain the benefit of Rule 15's relation back provision. Indeed, here, any mistake on the Government's part "was a mistake in legal judgment, not a mistake in the naming of the party, and thus it is not covered by Rule 15(c)." *Nobles v. Rural Cmty. Ins. Servs.*, 303 F. Supp. 2d 1279, 1287 (M.D. Ala. 2004); *see also Scott v. Safeco Ins. Co. of Indiana*, 2020 WL 4934486, at *4 (N.D. Ga. June 24, 2020) ("The Eleventh Circuit has not recognized a mistake of law as a 'mistake' under Rule 15(c)(1)(C), and several district courts to have addressed this issue within the Eleventh Circuit have specifically rejected it.").

Given the foregoing, the FAC is time-barred and does not relate back to the original complaint, and this Court should dismiss the FAC with prejudice.

**II.     The FAC Fails to Adequately Plead a Substantial Connection**

The Government's forfeiture claims in the FAC also fail because, even after being instructed by the Court to "firm up, clarify and explain in more-precise factual terms the theory used to support the claim for the forfeitability of the proceeds" (R&R at 81-82), it has not done so. D.E. 169 at 5. The Government has not alleged, and cannot allege, a viable connection, let alone a substantial one, between the defendant asset—the $9.1 million of proceeds from the November 2020 sale of PNC Plaza belonging to CBD 500—and the underlying offense, the alleged misappropriation of funds from PrivatBank through fraudulent loans in violation of Ukrainian law.

To state a cognizable forfeiture claim under either Section 981(a)(1)(C) or Section 981(a)(1)(A), the Government must allege "sufficiently detailed facts" demonstrating that a "substantial connection," or nexus, exists between the defendant asset and alleged criminal

activity. 18 U.S.C. § 983(c)(3); *$38,00 in U.S. Currency*, 816 F.2d at 1548 (affirming dismissal of complaint for failure to allege sufficient facts demonstrating a substantial connection); *see also United States v. Any & All Ownership Int. Held in the Name*, No. 16-9158, 2020 WL 278762, at *9 (D.N.J. Jan. 16, 2020) ("the plain language of the relevant provisions indicates that the stated nexus—involved in, traceable to, and proceeds—is an element of the civil forfeiture claims" and, "at a minimum, the Government must plausibly plead the requisite connection between the underlying offense and the seized property"). Here, the FAC not only fails to adequately plead such a nexus, the Government's allegations affirmatively disprove any connection, substantial or otherwise, between funds purportedly obtained unlawfully from PrivatBank and the proceeds that constitute the defendant asset.

The gravamen of the FAC is that $13 million of the $77 million used to purchase PNC Plaza in 2011 derived from an alleged "foreign bank fraud," in violation of Ukrainian law,[4] carried out by Kolomoisky and Boholiubov, who at the time were the majority shareholders of PrivatBank. *See* FAC ¶¶ 106, 109-110, 134-137. But as alleged, six years after the 2011 purchase of PNC Plaza, (and two years after PrivatBank was nationalized in 2016), PNC Plaza went into foreclosure, and in 2018 the property was acquired by the Joint Venture *via* the acquisition of the mortgage by Firm A and the subsequent transfer from Optima 500 of a deed in lieu of foreclosure to the Joint Venture. *See id*. ¶¶ 138-142, 148-152. The FAC alleges that the funds used by the Joint Venture to acquire PNC Plaza derived from two sources: a $17 million loan the Joint Venture took out from a third-party lender, and a $10 million contribution from Korf, Laber, and Firm A. *See id.* ¶ 154.

---

[4] As a threshold matter, the Government has failed to allege "sufficiently detailed facts" to support a reasonable belief that it will prove the existence of any underlying criminal conduct.

14

The Government acknowledges that the funds contributed by Firm A were not substantially connected to any unlawful activity. *See id*.¶ 142, fn. 10 ("Firm A was an unrelated third-party investor, which… had no connection to the Optima Family of companies or Kolomoisky and Boholiubov's misappropriation scheme from PrivatBank."). With respect to the $9.5 million contributed by Korf and Laber, the FAC alleges those funds were provided by FTA. *See id*. ¶ 155. The FAC also alleges that Korf and Laber "injected more money into PNC Plaza" *via* Optima 1375 II. *Id.* ¶ 157. Crucially, however, the FAC does not contain **a single allegation** concerning the source of the funds provided by FTA or Optima 1375 II, in connection with the 2018 purchase of PNC Plaza or otherwise, let alone specific allegations tracing those funds to specified unlawful activities. *See generally*, FAC. There are **no** allegations tracing the purportedly illicit proceeds of the PrivatBank Loans to FTA or Optima 1375 II. There are **no** allegations that the funds from FTA or Optima 1375 II derived from other purportedly fraudulent PrivatBank loans, or that those funds were substantially connected to **any** unlawful activity of **any** kind.

Rather, in pure conclusory fashion, the Government alleges that the "use of funds purportedly" from those companies "allowed Korf and Laber to continue owning" PNC Plaza, and to "conceal[] and disguise[e] the nature, location, source, ownership, and control of the misappropriated funds." *Id.* ¶ 160. That conclusory assertion, unsupported by any specific allegations, does not adequately plead a substantial connection between the $9.1 million in proceeds that the FAC names as the defendant *in rem*, and **any** unlawful activity, requiring dismissal of the Government's claims. *See United States v. Wood*, 2016 WL 8131221, at *3 (E.D. Ky. Oct. 17, 2016) (rejecting 981(a)(1)(C) forfeiture claim because "condo-related sale proceeds" were not traceable to underlying offenses and Government's "inferential assertion that" the owner "could not have purchased the condo but for the alleged criminal conduct" was inadequate); *see*

15

*also United States v. $688,670.42 Seized from Regions Bank Acct. No. XXXXXX5028*, 449 F. App'x 871, 877 (11th Cir. 2011) ("Section 981(a)(1)(C) confines the forfeiture to the ***proceeds*** of unlawful activity.") (emphasis in original); Section 981(a)(1)(A) (providing for forfeiture of property ***involved in*** money laundering transactions) (emphasis added). For this reason, the Government has not, and cannot, establish a substantial connection between the defendant asset and the alleged underlying offense, requiring dismissal of the FAC with prejudice.

In this regard the FAC suffers from the same fatal defect as the Government's original complaint—the Government is operating on the theory that "Korf and Laber are personally culpable, based on prior acts," and the defendant asset is subject to forfeiture because Korf and Laber "stood on both sides of" the 2018 sale of PNC Plaza. R&R at 71. As Magistrate Judge Goodman held, however, this theory renders the claims in the FAC essentially *in personam* in nature, which is improper because civil forfeiture is "not an action against the claimant [owner]." *Id.* (citing *$38,00 in U.S. Currency*, 816 F.2d at 1543). The Court should not countenance the Government's efforts to improperly pursue *in personam* claims under the guise of an *in rem* civil forfeiture action, and the FAC should be dismissed.

### III. Jurisdiction Was Lacking Over the Original Complaint And Cannot Be Cured

The Government's initial complaint was dismissed for a jurisdictional defect. *See.* R&R at 71. Jurisdiction is measured at time of filing. *Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 570-71, 582 (2004). Moreover, lack of jurisdiction cannot be cured by amendment and switching in a new defendant. *See Newman-Green, Inc. v. Alfonzo Larrain*, 490 U.S. 826, 831 (1989); *Brandenburg v. Bd. of Regents of Univ. Sys. of Georgia*, 518 F. App'x 628, 631 (11th Cir. 2013). Consequently, the United States cannot avoid dismissal here by amending its complaint to add a "proper" defendant; it must file a new suit against this "proper" defendant. To be sure, this

is not merely an academic issue, as the difference between dismissal and amendment could have meaningful consequences in connection with the applicable statutes of limitations.

## CONCLUSION

This Court should dismiss this action with prejudice and order the immediate return of the seized funds.

## REQUEST FOR HEARING

Pursuant to Local Rule 7.1(b)(2), the Claimants hereby request a hearing on this motion because of the substantial and complex legal issues raised, the importance of the rights at stake, and the utility of discussing the factual nuances of the case. Claimants estimate that no more than one and a half hours will be required for argument.

          Respectfully submitted,

          */s/ Robert T. Dunlap*
          Velvel (Devin) Freedman
          Robert T. Dunlap (FL Bar No. 119509)
          Colleen Smeryage
          Roche Freedman LLP
          1 SE 3rd Avenue, Suite 1250
          Miami, FL 33131
          Tel:  (786) 924-2900
          vel@rochefreedman.com
          rdunlap@rochefreedman.com
          csmeryage@rochefreedman.com

          */s/ Howard Srebnick*
          Howard M. Srebnick (FL Bar No. 919063)
          Zaharah Markoe (FL Bar No. 504734)
          Black Srebnick
          201 South Biscayne Blvd., Suite 1300
          Miami, FL 33131
          Tel: (305) 371-6421
          HSrebnick@royblack.com
          Zmarkoe@royblack.com

Marc E. Kasowitz
Mark P. Ressler
Joshua N. Paul
*Pro Hac Vice Anticipated*
Kasowitz Benson Torres LLP
1633 Broadway
New York, New York 10019
Tel: (212) 506-1700
MKasowitz@kasowitz.com
MRessler@kasowitz.com
JPaul@kasowitz.com

*Attorneys for Claimants*
