UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 1:20-CV-23278-GAYLES/GOODMAN

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

APPROXIMATELY $9,105,221.62 IN FUNDS (PLUS INTEREST) CURRENTLY HELD BY THE UNITED STATES MARSHALS SERVICE REPRESENTING 95% OF THE NET PROCEEDS FROM THE SALE OF THE REAL PROPERTY LOCATED AT 500 WEST JEFFERSON STREET, LOUISVILLE, KY 40202 KNOWN AS PNC PLAZA,

        Defendant.
_____/

**UNITED STATES' RESPONSE TO CLAIMANTS' OBJECTIONS TO MAGISTRATE JUDGE JONATHAN GOODMAN'S REPORT AND RECOMMENDATIONS REGARDING CLAIMANTS' MOTION TO DISMISS**

After thorough briefing, extensive argument, and additional post-argument briefing, Magistrate Judge Goodman issued a Report and Recommendation (ECF No 241, the "R&R") recommending that the Court deny Claimants' motion to dismiss the First Amended Complaint ("FAC"). The Court should adopt the R&R in full. It correctly applies civil forfeiture law to the FAC's allegations and concludes that the FAC is not time barred, that it adequately states a claim for relief, and that the Court has jurisdiction.

Throughout this process, Claimants' arguments have, in Judge Goodman's (generous) assessment, "evolved" and "slightly shift[ed]." ECF No. 234 at 54. In their objections to the R&R, Claimants have "shifted" their argument once again.

1

After Claimants originally focused almost exclusively on statute of limitations grounds as a basis for dismissal, *see* ECF No. 221 at 8-13, they have all but abandoned that argument and now do not object to the R&R's conclusion that their marquee argument was, effectively, frivolous. *See* ECF No. 221 at 18, 21 (describing the statute on which Claimants relied for their limitations argument as "inapplicable" and "irrelevant").

Instead, Claimants' objection to the R&R primarily contends that the FAC failed to state a claim, an argument that merited a mere three pages in their motion to dismiss. ECF No. 221 at 13-16. Notably, nowhere in those three pages did Claimants argue that the government's "proceeds" theory of forfeiture was flawed. Instead, they claimed that there was no "substantial connection" between the Defendant Asset and criminal activity. Now, Claimants' lead objection to the R&R is that the R&R did not properly analyze the FAC's "proceeds" theory of forfeiture. *Id*. at 7.

The Court should reject Claimants' "evolved" arguments regarding proceeds, as they are unmoored from the statutory framework and inconsistent with the allegations in the FAC. It should also reject Claimants' repackaged arguments regarding a lack of "substantial connection" between the Defendant Asset and the underlying criminal activity. As Judge Goodman concluded, the FAC adequately states a claim, and the Court has jurisdiction over this action.

## BACKGROUND

The FAC seeks forfeiture of approximately $9.1 million, which is the net proceeds of the sale of real property located at 500 West Jefferson Street, Louisville, KY 40202 known as PNC Plaza (the "Defendant Asset"). ECF No. 187 ¶ 3. The FAC alleges forfeitability on two grounds. First, the Defendant Asset is forfeitable under 18 U.S.C. § 981(a)(1)(C), because it is traceable to violations of U.S. law and specified unlawful activity, including violations of 18 U.S.C. §§ 1956, 1957, 2314, and 2315. Second, the property is forfeitable under 18 U.S.C. § 981(a)(1)(A), because

it was involved in and facilitated money laundering offenses in violation of 18 U.S.C. §§ 1956 and 1957, or is traceable to such property. *Id*. ¶¶ 6-8.

The FAC alleges that Ihor Kolomoisky and Gennadiy Boholiubov, two Ukrainian oligarchs, misappropriated billions of dollars from PrivatBank, one of the largest banks in Ukraine, via fraudulent loans. *Id*. ¶¶ 14, 15, 19. They then laundered the misappropriated funds through accounts at PrivatBank's Cyprus branch before their U.S. based associates, Mordechai Korf and Uriel Laber, used the funds to purchase assets for safekeeping and further laundering. *Id*. ¶¶ 21-23, 85.

Through that scheme, Kolomoisky, Boholiubov, Korf, and Laber acquired PNC Plaza using the entities Optime Ventures LLC and Optima 500 LLC. *Id*. ¶¶ 103, 105. Kolomoisky and Boholiubov misappropriated funds to purchase PNC Plaza via two fraudulent loans obtained from PrivatBank for $9.3 and $13.5 million. *Id*. ¶¶ 111-27. The FAC traces the laundering of the funds, minute by minute, through Cypriot bank accounts before they were used to purchase PNC Plaza on September 22, 2011. *Id*. ¶¶ 129-36.

In addition to the misappropriated funds, Korf, Laber, Kolomoisky, and Boholiubov assumed a mortgage of $65,700,000. *Id*. ¶ 108. They obtained income from PNC Plaza, but failed to pay the mortgage, which they defaulted on in 2017. *Id*. ¶¶ 138, 141.

In 2018, Korf and Laber created new entities, Optima CBD Investments LLC and CBD 500 LLC, to restructure the ownership of the property and "refinance" the debt. *Id*. ¶ 149. They partnered with an unrelated investor, "Firm A," to create a joint venture, which CBD 500 LLC owned a 95% interest in. *Id*. ¶¶ 142-47. Claimants, through the joint venture entity, purchased the promissory note on which they had defaulted. *Id*. ¶ 149. To acquire the promissory note, the joint

venture took on $17 million of new debt, and used approximately $9.5 million from another Optima-affiliated entity. *Id*. ¶ 154-55.

Once the joint venture entity acquired the note, Korf and Laber transferred the deed to PNC Plaza to the joint venture entity in lieu of foreclosure. *Id*. ¶¶ 152-53. The FAC alleges that the restructuring itself was part of the money laundering—it further obscured the criminal source of the purchase funds for the building. *Id*. ¶ 160.

In July 2020, Korf and Laber contracted to sell PNC Plaza entirely to the third-party investor. *Id*. ¶ 162. The government filed this action, and the sale proceeds from that contract were ultimately restrained and now constitute the Defendant Asset.

The government's initial complaint in this action was dismissed because the Court determined that the description of the *res* was defective. ECF No. 164 at 70. In finding that the true *res* was effectively PNC Plaza (or now, the proceeds from the sale of the property), Judge Goodman recommended that the government be granted leave to amend its complaint to clearly identify the real property proceeds as the *res* itself. *Id*. at 74. The government was granted leave to amend. ECF No. 186. The FAC has now redefined the *res* to constitute the proceeds from the sale of PNC Plaza. ECF 187 at 1.

## ARGUMENT

The R&R, as required at this stage in the proceeding, properly accepted "all of the factual allegations in the Complaint as true," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), "and construe[d] them in the light most favorable to the plaintiff[]," *Ray v. Spirit Airlines, Inc.*, 836 F.3d 1340, 1347 (11th Cir. 2016).

**I.      The R&R correctly analyzed the government's "proceeds" theory of forfeiture**

Claimants argued in their motion to dismiss that the FAC failed to allege a "substantial connection" between the Defendant Asset and underlying criminal activity. ECF No. 221 at 13-16. The "substantial connection" requirement arises in 18 U.S.C. § 983(c)(3), which relates to the government's "[b]urden of proof" at trial. Specifically, "if the Government's theory of forfeiture is that the property was . . . **involved in** the commission of a criminal offense, the Government shall establish that there was a **substantial connection** between the property and the offense." 18 U.S.C. § 983(c)(3) (emphasis added).

The statutory "substantial connection" requirement applies only to specific types of forfeiture—as relevant here, forfeiture of property "involved in," a crime—which falls under 18 U.S.C. § 981(a)(1)(A) ("The following property is subject to forfeiture to the United States: Any property, real or personal, involved in a transaction or attempted transaction in violation of section 1956, 1957 or 1960 of this title, or any property traceable to such property.").

The FAC, however, encompasses *two* theories of forfeiture. One is that the property was involved in, or is traceable to property involved in, criminal activity, under Section 981(a)(1)(A). There is no question that the "substantial connection" requirement applies to that theory, and the FAC adequately alleges such a connection, as discussed further below.

But the government's second theory of forfeiture is that the Defendant Asset constitutes proceeds, or is traceable to proceeds, of criminal activity, and is therefore forfeitable under 18 U.S.C. § 981(a)(1)(C). ECF No. 187 at 39.

The "substantial connection" standard does not apply to property that constitutes, is derived from, or is traceable to, proceeds. *See United States v. $125,938.62*, 537 F.3d 1287, 1293 n.2 (11th

Cir. 2008) ("the Government was required to demonstrate only that the funds were derived from or were traceable to" proceeds).

In *United States v. Title & Int. in the Real Prop. & Appurtenances*, No. EP-14-CV-60-DB, 2015 WL 12748176, at *5 (W.D. Tex. Mar. 24, 2015), the court addressed precisely this issue: "In the instant cause, the Government is proceeding under *two* theories of forfeiture: (1) that the [defendant assets] were involved in money laundering (18 U.S.C. § 981(a)(1)(A)), which would trigger the 'substantial connection' requirement under 18 U.S.C. § 983(c)(3); and, (2) that the [defendant assets] constituted or were derived from proceeds traceable to illegal activities (18 U.S.C. § 983(a)(1)(C)), which does *not* trigger the 'substantial connection' requirement. Thus, [Claimant's] assertion that 'the Government must plead a substantial connection between the [defendant assets] and the alleged offenses' oversimplifies the matter." So too here—the First Claim of the FAC is based on a proceeds theory, and so Claimants' argument for dismissal based on a lack of alleged "substantial connection" does not apply to this claim.

Claimants have belatedly realized that even if certain counts of the FAC failed to allege a substantial connection, that would not mean dismissal of the FAC in its entirety. And so they have engaged in a sort of legal alchemy, hoping to apply that standard to the government's "proceeds" allegations. Neither the statutory text nor the caselaw supports their approach. Indeed, in the absence of authority, Claimants cite their own brief as "show[ing]" that the government must prove a "substantial connection" in relation to its proceeds theory. *See* ECF No. 245 at 9. But that proves nothing. Proceeds need only be "traceable" to criminal activity, or traceable to property that is traceable to criminal activity (i.e. derivative funds)—there is no "substantial connection" requirement in the statute or otherwise.

In any event, there is no question that the Defendant Asset is "traceable to" proceeds of criminal activity. The FAC alleges that the funds used to purchase PNC Plaza were misappropriated from PrivatBank through two fraudulent loans. ECF No. 187 ¶¶ 111-27. It traces those funds to the purchase of the property. *Id*. ¶¶ 129-36. The FAC alleges that the value of that property was transferred by Korf and Laber in the form of a deed, a thing of value, and which they only possessed as a result of the initial criminal activity. *Id*. ¶¶ 152-53. Finally, PNC Plaza (represented by the deed) was sold, and the proceeds of the sale were restrained and constitute the Defendant Asset. There is no break in the chain of value transfers.

Nevertheless, Claimants contend that the 2018 restructuring broke the chain because they inserted "untainted" money into the equation. ECF No. 245 at 9. But that is not so. Inserting untainted money does not break a chain of traceability. *See United States v. Ward*, 197 F.3d 1076, 1083 (11th Cir. 1999) (holding that comingling untainted assets does not remove a taint from criminal proceeds). If, rather than engaging in a convoluted restructuring, Claimants had reached a deal with their creditor to pay off some of their debt using clean money, the forfeitable value of the building would have been the same. Simply transferring the deed, a thing of value, from one entity to another as part of a debt payment does not sever the connection between the property and the criminal activity, because the key thing of value (the deed) is still traceable to the initial purchase.

The R&R properly analyzed this question. Claimants' motion to dismiss did not ask the Court to engage in a thorough "proceeds" tracing analysis. The R&R did so anyway, and Claimants cannot fault any failure to address their newly discovered arguments. The Court should reject Claimants' first objection.

### II. The R&R correctly found that the Defendant Asset had a substantial connection to, and was traceable to, an offense

Claimants next contend that the R&R improperly found a substantial connection between the Defendant Asset and the alleged criminal activity. The crux of their argument is that, again, because they restructured the ownership of PNC Plaza in 2018, the building (and its sale proceeds) lost their substantial connection to the laundering activity.

The R&R rejected that argument, and Claimants' objections simply retread the same ground. Where the government relies on an "involved in" forfeiture theory, it must allege a substantial connection between the criminal activity and allegedly forfeitable property. "The term 'involved in' has consistently been interpreted broadly by courts to include any property involved in, used to commit, or used to facilitate the offense." *United States v. Seher*, 562 F.3d 1344, 1369 (11th Cir. 2009) (internal quotation marks omitted). That provision also "refers to property that is itself being laundered." *United States v. Approximately 250 Documents Containing the Forged Hand Writing of President John F. Kennedy & Others*, No. 03 CV 8004 (GBD), 2008 WL 4129814, at *3 (S.D.N.Y. Sept. 5, 2008). "[A]t the pleadings stage the Government must only convince the Court that there is evidence sufficient to support a *reasonable belief* that the Government will be able to prove that substantial connection at trial." *Title & Int. in the Real Prop. & Appurtenances*, 2015 WL 12748176, at *5 (emphasis in original); *United States v. $200,255.00 in U.S. Currency,* No. 7:05-CV-27 (HL), 2006 WL 1687774, at *7 (M.D. Ga. June 16, 2006).

A "[s]ubstantial connection may be established by showing that use of the property made the prohibited conduct less difficult or more or less free from obstruction or hindrance." *United States v. Approximately $299,873.70 Seized from a Bank of Am. Acct.*, 15 F.4th 1332, 1340 (11th Cir. 2021) (quoting *United States v. Herder*, 594 F.3d 352, 364 (4th Cir. 2010)). "[T]he nexus

between the property and the illegal activity need not be integral, essential, or indispensable." *United States v. Thirty-Eight Thousand Three Hundred Twenty Dollars in U.S. Currency*, No. 221CV02624JPMTMP, 2022 WL 6755863, at *3 (W.D. Tenn. Oct. 11, 2022).

There is no question that the FAC alleges that PNC Plaza was "involved in" money laundering. It was used to launder funds misappropriated from PrivatBank, to hide those funds, and to attempt to conceal the connection between the misappropriated funds and the property. *See, e.g.*, ECF No. 187 ¶¶ 90; 92-97; 137; 141 n.9; 160. Claimants *do not dispute* that the FAC makes those allegations. There is thus no question whatsoever that PNC Plaza was "involved in" criminal activity and had a substantial connection to that activity.[1]

Section 981 authorizes forfeiture of property "involved in" a transaction in violation of 18 U.S.C. §§ 1956 and 1957, as well as "any property *traceable* to such property." Thus, forfeiture is permissible if the Defendant Asset itself has a substantial connection to money laundering or if it is traceable to property having such a substantial connection. *Title & Int. in the Real Prop. & Appurtenances*, 2015 WL 12748176, at *5 ("[T]he Government must state sufficiently detailed facts to support a reasonable belief that it will be able to prove at trial that the [defendant assets] were involved in or are traceable to property involved in money laundering—that is, that the [defendant assets] had a substantial connection to money laundering *or are traceable to property having a substantial connection to money laundering*.") (emphasis added). The Defendant Asset is traceable to the *sale* of PNC Plaza in 2020—it represents the proceeds of the sale. PNC Plaza was "involved in" criminal activity, and therefore substantially connected to the criminal activity of laundering money, so the proceeds from the sale of the building are forfeitable as property

---

[1] Claimants had made that argument in their first motion to dismiss but have since abandoned it, just as they have abandoned their frivolous statute of limitations arguments.

9

traceable to property involved in criminal activity. The R&R thoroughly, and correctly, analyzed this point (and the same objections Claimants now raise).

Nevertheless, Claimants again assert that the 2018 restructuring severed the substantial connection between the building and the crime. ECF 245 at 12-13. They declare that "the FAC does not claim that the 2018 purchase somehow facilitated the laundering of Optima 500's worthless equity." *Id*. at 13. That is inaccurate—the FAC emphatically states that the restructuring aided in laundering the misappropriated value from PrivatBank: "The purpose of the restructuring transactions was to retain the asset constituting the proceeds of the misappropriation from PrivatBank, while also concealing and disguising the nature, location, source, ownership, and control of the misappropriated funds." ECF No. 187 ¶ 160. Korf and Laber transferred the ownership of PNC Plaza from an entity they owned to another entity they owned and erased $40 million of debt in the process. They held the deed to the building, which was involved in laundering, and they transferred it to themselves. The deed was not "valueless"; in fact, Claimants injected additional money to secure it from their creditors. *See Kennedy v. JP Morgan Chase Nat. Corp.*, No. 10–CV–11324–RGS, 2011 WL 1576569, at *3 (D. Mass. Apr. 26, 2011) ("Under a deed in lieu, the borrower conveys a fee-simple title to the mortgagor in exchange for a forgiveness of the debt secured by the mortgage."). Had the initial holding company retained the same ownership structure, and simply negotiated a refinancing deal, the outcome would have been the same.

As the R&R notes, if conduct like Claimants' severed the substantial connection between PNC Plaza and the criminal activity, it would provide criminals a "recipe for money laundering." ECF No. 241 at 28. All a criminal would have to do was purchase a property with criminal proceeds, issue a loan against a property from another entity owned by the criminal, default, and

transfer the property to that entity, and, poof, the criminal proceeds would be clean. Obviously, Section 1956 does not sanction such conduct. The simple transfer of ownership of a building from one hand to another does not mean that the building did not function as a tool in criminal activity.

Even today, under the innocent ownership of a new entity, PNC Plaza was involved in money laundering. It will forever have been so. Claimants find that reality unsettling, but it is only problematic if taken out of context. Congress constructed careful guardrails around forfeiture.

PNC Plaza, though still substantially connected to criminal activity, cannot be forfeited from its current owners because Congress, in the Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), created explicit protections for "innocent owners of property. 18 U.S.C. § 983(d)(1) provides that an "innocent owner's interest in property shall not be forfeited." Where an individual acquires an interest in property after illegal conduct has occurred, an innocent owner is one (1) who "was a bona fide purchaser . . . for value" and (2) who "did not know and was reasonably without cause to believe that the property was subject to forfeiture." 18 U.S.C. § 983(d)(3).

Section 983 also includes a statute of limitations on forfeiture of property—years from now, PNC Plaza's "substantial connection" will be undiminished, but the statute of limitations will have run. *See* 19 U.S.C. § 1621 (limiting a civil forfeiture action to "five years after the time when the alleged offense was discovered, or . . . within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later.").

Claimants next argue that the Defendant Asset is not substantially connected to criminal activity because the building was more like a "bank account" or "routing number" than property, and that only "clean" money remained in the "account" after the restructuring. ECF No. 245 at 14. That argument ignores the difference between a bank account, or a pathway into it, and a piece of real estate. A building, made of brick and mortar and occupying a piece of land, has independent

11

value. A bank account, standing alone, has none—only the money that is placed into the account has value. A bank account is much more like the *address* of real property than the property itself, which is much more akin to the money in that account. It means something to own a building, as Claimants well know—they owned PNC Plaza, and continued to own PNC Plaza after the 2018 restructuring. The deed representing that ownership had value, and they transferred that value from one holding company to another. That transfer did not erase the connection between the building and the criminal activity. Thus, the infusion of clean money is irrelevant—the tainted asset remained tainted.

The R&R cites cases finding that the "substantial connection" between a real property and criminal activity is not severed by a transfer. Claimants' attempt to distinguish them are ineffectual. Specifically, Claimants question the R&R's reliance on *United States v. $131,551.03 Plus Accrued Int. from Sale of 10 Table Bluff Rd., Loleta, CA*, No. C06-05256 SI, 2010 WL 1135743, at *3 (N.D. Cal. Mar. 22, 2010) and *United States v. 1309 Fourth St., La Grande, Union Cnty., Dist. of Or.*, No. 2:12-CV-02263-MA, 2015 WL 670572, at *7 (D. Or. Feb. 17, 2015).

The court in *$131,551.03 Plus Accrued Int.* held that a house involved in narcotics trafficking was still substantially connected to that criminal activity after it was sold to the criminal's mother. Similarly, in *1309 Fourth St.*, the court concluded that a house used in drug trafficking retained its substantial connection to criminal activity even after a sale to the criminal's sister, who purchased the property with clean money. Both of those cases offer ample support for the R&R's conclusion that a substantial connection remains even after a transfer. Claimants offer no legal reason to distinguish them; they simply say, without authority, that the 2018 restructuring erased PNC Plaza's connection to the criminal activity. Both cases demonstrate just the opposite.

As the R&R aptly notes, this is an unusual case. Normally, when an entity defaults on a loan, an unrelated creditor forecloses on the security. That did not happen here. Instead, Claimants purchased the note and stood in the shoes of the creditor. Rather than lose the property following their default, they transferred the property to themselves in a transaction that was anything but arm's length. *See* ECF No. 187 ¶¶ 150-53. "Once proceeds become tainted, they cannot become untainted." *Ward*, 197 F.3d at 1083.

PNC Plaza was connected to the money laundering activity and retained that connection when it was transferred from one Optima entity to another. When it was converted into proceeds per Claimants' sale agreement, it retained that connection. A tainted asset does not become clean simply because clean money is added into the equation, or the property is transferred from one form (or one party) to another. *See Ward*, 197 F.3d at 1083 ("Congress did not intend for participants in unlawful activities to escape conviction for money laundering 'simply by commingling funds derived from both 'specified unlawful activities' and other activities.'").

Claimants finally restate their tired argument that the FAC is really an *in personam*, rather than *in rem*, action. There is nothing to support that claim. The government, and the FAC, are focused on the property—PNC Plaza was involved in, and traceable to, criminal activity. It was purchased with funds misappropriated from PrivatBank and used to further launder those funds. The government seeks to forfeit the tainted property.

It is irrelevant that Claimants have not been indicted. Even if they were acquitted after a criminal trial, the government could *still* forfeit PNC Plaza. *See One Lot Emerald Cut Stones & One Ring v. United States*, 409 U.S. 232, 234 (1972) ("acquittal on the criminal charge did not necessarily resolve the issues in the forfeiture action"). There are many reasons why a person is not criminally charged, but that person's property that was involved in crime is nevertheless

13

subject to forfeiture. *See United States v. Whitaker*, No. 20-2321, 2022 WL 16859643, at *1 (4th Cir. Nov. 10, 2022) ("Although Whitaker argues that the Government cannot establish a substantial connection between the currency and a criminal offense because he was not convicted of any crime with respect to the seizure of the currency, a conviction is not required for a civil forfeiture.").

As the R&R found, the FAC alleges more than enough to meet the government's pleading requirement to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). The detailed allegations of the FAC support a reasonable belief that at trial the government can show that PNC Plaza constitutes property "involved in" multiple money laundering transactions or property traceable to such property, and that a "substantial connection" exists between the proceeds from the sale of PNC Plaza and the money laundering offenses alleged. *See United States v. All Funds on Deposit in, or transferred to or through, Banc of Am. Acct. No. 207-00426 held in the Name of Kenneth V. Jaeggi & Patti S. Jae*, No. CV–05–3971(SJF), 2007 WL 2114670, at *7 (E.D.N.Y. July 16, 2007) (if the government pleads "specific facts supporting an inference that the defendants-in-rem are traceable to an offense constituting 'specified unlawful activity,' . . . it has met its burden at the pleadings stage"). The Court should adopt the R&R's conclusions and deny Claimants' motion.

### III. The R&R correctly found that the Court has jurisdiction

Claimants object to the R&R's conclusion that the Court has jurisdiction in this matter. ECF No. 245 at 19. They say that the prior identification of the defendant *in rem* divested the Court of jurisdiction at the outset.

The Court should adopt the R&R's finding and reject Claimants' objection. The Court already decided this issue in the context of Claimants' first motion to dismiss—the related Report

and Recommendation concluded that the Court had jurisdiction and that amendment of the complaint was proper. ECF No. 164 at 74. Claimants also raised exactly this jurisdictional argument in opposing the government's motion for leave to amend, ECF No. 180, and the Court rejected it. ECF No. 186.

Nothing has changed, and Claimants raise no new arguments. The cases they cite in support of their position are completely inapposite. *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 831 (1989) concerns diversity jurisdiction, which is a type of subject matter jurisdiction. *Brandenburg v. Bd. of Regents of Univ. Sys. of Georgia*, 518 F. App'x 628, 631 (11th Cir. 2013) is not an *in rem* case and notes that the failure to seek amendment was the fault of the plaintiff, implying that the jurisdictional defect could have been fixed by amendment. Finally, in *United States v. $389,820.00 in United States Currency*, 829 F. App'x 488, 491 (11th Cir. 2020), the court held that even though there was initially a lack of jurisdiction due to a state court exercising jurisdiction over the same property, the district court might still have jurisdiction after the property was turned over. In other words, the court implied that amendment would be proper to fix the jurisdictional defect. The court did not dismiss the action, simply the complaint, and remanded. None of those cases undermines the R&R's, or this Court's, decision regarding its jurisdiction.

The Court has always had control over the *res* in this action, and the FAC addresses the concerns raised by the Court with respect to Claimants' first motion to dismiss. *In rem* jurisdictional defects are curable, and even waivable by the parties. *See, e.g., Complaint of McLinn*, 744 F.2d 677, 685 (9th Cir. 1984) (leave to amend proper where there was an *in rem* jurisdictional defect); Supp. R. G(5)(b) ("A claimant waives an objection to in rem jurisdiction or to venue if the objection is not made by motion or stated in the answer."); *Leopard Marine & Trading, Ltd. v. Easy St. Ltd.*, 896 F.3d 174, 183 (2d Cir. 2018) (a "jurisdictional defect" related

to the *res* "can be waived."). They do not divest a court of jurisdiction, and Claimants are unable to point to any authority supporting their position.

**IV.     The R&R correctly found that Claimants waived their statute of limitations defense**

The R&R concludes that the FAC is not time barred, and Claimants do not object to that conclusion. ECF No. 241 at 21-22. Yet, Claimants object to the R&R's conclusion that Claimants have waived any argument relating to the statute of limitations applicable to this action. The Court should reject their argument.

Claimants asserted in their initial motion to dismiss that the FAC was barred by the five-year limitations period in 19 U.S.C. § 1621. ECF No. 196 at 14-16. To support their position, they submitted dozens of pages of extrinsic evidence. *See* ECF Nos. 196-1 to 196-11. This Court held that under 18 U.S.C. § 981(g)(1), the United States was entitled to a stay "[s]o long as Claimants' Motion to Dismiss relies on allegations outside the four corners of the Amended Complaint." ECF No. 214 at 2. To avoid the stay, Claimants withdrew that portion of their motion. *See* ECF Nos. 216 at 2; 216-1 at 2, 14-16.

The R&R found that Claimants "have withdrawn, and therefore *waived*, that argument." ECF No. 241 at 21 (emphasis in original). Claimants now object to that finding. ECF No. 245 at 20. The government foresaw exactly this sort of machination when it requested a stay encompassing all of Claimants' arguments: "Could Claimants later renew the [statute of limitations] argument if the Court otherwise denies their motion? Claimants have sufficiently waffled on such issues before; any representations they make on the matter now are cold comfort and would likely waste judicial resources." ECF No. 211 at 5-6.

By withdrawing their argument regarding the statute of limitations under 19 U.S.C. § 1621, Claimants induced the Court to bypass the stay and decide their motion to dismiss. That purposeful

withdrawal acts as a waiver. *United States v. Horsfall*, 552 F.3d 1275, 1283–84 (11th Cir. 2008); *see also United States v. Cobb*, 842 F.3d 1213, 1222 (11th Cir. 2016); *United States v. Pellegrino*, 777 F. App'x 972, 973 (11th Cir. 2019).  The Court should adopt the R&R's conclusion.

## CONCLUSION

Claimants' objections lack merit.  The R&R correctly concluded that the FAC adequately states a claim for relief, is not time barred, and that the Court has jurisdiction.  The government respectfully requests that the Court adopt the R&R in full and deny Claimants' motion to dismiss.

Dated:  September 13, 2024   Respectfully submitted,

MARGARET A. MOESER, CHIEF

MONEY LAUNDERING & ASSET RECOVERY SECTION

BY:   */s/ Shai D. Bronshtein*
Shai D. Bronshtein (ID #A5502665)
Trial Attorney
United States Department of Justice
1400 New York Avenue NW
Washington, DC 20005
(202) 616-5950
Shai.Bronshtein@usdoj.gov